**Laura JACKSON and Dale Jackson, Appellants,**

v.

**AMERICAN EQUITY INSURANCE COMPANY, a foreign insurance corporation authorized in the State of Alaska, Appellee.**

No. S–10328.

Supreme Court of Alaska.

April 2, 2004.

Rehearing Denied May 25, 2004.

---

**59.** *Overton v. Bazzetta,* 539 U.S. 126, 123 S.Ct. 2162, 2170, 156 L.Ed.2d 162 (2003).

**60.** *Id.*

Neil T. O'Donnell, Atkinson, Conway & Gagnon, Anchorage, for Appellants.

Mark A. Sandberg and William M. Wuestenfeld, Sandberg, Wuestenfeld & Corey, Anchorage, for Appellee.

Before FABE, Chief Justice, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

This case presents questions about the duty a liability insurer owes its insured when personal injury plaintiffs make a policy limits settlement demand. A jury ultimately returned a special verdict for the liability insurer following a trial of the insured's bad faith claim against the insurer. We hold that it was not error, under the circumstances of this case, to decline to give the trial jury a special verdict form that would have allowed the jury to find that the insurer breached a duty to give the insured an assurance that it would pay any judgment even if it exceeded the insured's policy limits. We also hold that the insured did not preserve his assertion that the court misinstructed the jury about the duties an insurer owes its insured, and

hold that it was not plain error to give the instruction. We therefore affirm the judgment.

## II. FACTS AND PROCEEDINGS

Laura and Dale Jackson sustained serious bodily injuries on July 25, 1997 when a trailer separated from its towing truck, crossed the centerline of the Seward Highway, and crashed into their car. The Jacksons settled their claims against the owner and operator of the trailer and truck, Great Alaska Lawn & Landscaping Company (Great Alaska) for about $1.2 million. This sum represented the policy limit of the Alaska National Insurance Company insurance policy covering Great Alaska, plus attorney's fees and interest. Great Alaska also assigned the Jacksons its contractual indemnity rights against James N. Evridge, the mechanic who installed the trailer hitch, and his company, Jim's Mobile Equipment Repair. The Jacksons filed suit against Evridge. The Jacksons' complaint against Evridge alleged negligence per se and strict products liability claims.

About a year before the Jacksons' accident, Evridge, doing business as Jim's Mobile Equipment Repair, had entered into a year-long contract with Great Alaska under which Evridge had repaired a number of Great Alaska's trucks and trailers. The contract provided that Evridge was to procure insurance "to hold harmless Great Alaska Lawn and Landscaping ... from all liability and responsibility for work performed by Jim's Mobile Equipment Repair." Evridge had obtained a liability insurance policy through his insurance broker, CHI of Alaska, Inc. American Equity Insurance Company (AEI) issued Evridge's policy. AEI's policy covered Evridge at the time of the Jacksons' accident.

After the Jacksons' accident, AEI retained lawyer Patrick McKay to defend Evridge and AEI's interests in the action brought by the Jacksons. AEI later hired Paul Stockler to replace McKay as Evridge's defense counsel. Evridge also retained his own private counsel, Marshall Coryell.

The Jacksons and Evridge both moved for summary judgment on the negligence per se and strict liability claims. Evridge also moved for summary judgment on the issue of his liability for punitive damages. In July 1999 Superior Court Judge Karen L. Hunt dismissed the strict liability claims against Evridge, but allowed the Jacksons' negligence per se claims brought under 13 Alaska Administrative Code (AAC) 04.002 (2003) and 13 AAC 04.005(a) (2003) and their punitive damages claims to proceed to trial.

The Jacksons made Evridge an offer of judgment under Alaska Civil Rule 68, offering to settle for the amount of his policy limits with AEI. Marshall Coryell, Evridge's personal attorney, wrote several letters to AEI requesting that AEI either accept the Jacksons' offer of judgment and settle the case for no more than the policy limits, or, alternatively, issue an assurance to Evridge that AEI would pay any excess judgment against Evridge if the case went to trial. On three separate occasions, AEI informed Evridge that it was not obligated to pay a judgment in excess of his policy limit of $1 million, and that it would not agree to provide Evridge written assurance that it would pay a judgment in excess of the policy limits if the case went to trial.

AEI, the Jacksons, Evridge, and their attorneys participated in a mediation in July 1999 at the office of the Jacksons' attorney, Baker Brattain, LLC. AEI declined the Jacksons' policy limits settlement offer, and instead offered to settle the Jacksons' claims for $400,000. AEI had conducted an assessment of Evridge's liability and concluded that the Jacksons' claims were worth substantially less than the policy limits, and that Great Alaska, the owner of the truck and trailer involved in the Jacksons' accident, was primarily at fault. The Jacksons refused AEI's offer. Evridge's personal attorney, Marshall Coryell, again asked AEI to issue a written assurance that AEI would cover a judgment against Evridge in excess of his policy limits if no settlement was reached and the case went to trial. Paul Stockler, the attorney AEI retained to defend Evridge, explained to Coryell and Evridge that if AEI lost the case and a judgment was actually entered for more than Evridge's policy limits, it might be liable for the excess judgment but it was not willing to guarantee in writing prior to trial

that it would pay a judgment in excess of the policy limits. Roger Holmes, the mediator, testified that AEI intimated to Evridge and Coryell that:

[W]e're not in the position ... of guaranteeing that, if you buy a million dollars worth of insurance, we're going to pay three or four million. You didn't pay a premium for that, so we'll see what happens. We want to try the case, but we're not going to put this in writing.

After the mediation attempt failed, Coryell wrote a letter to AEI's legal counsel, William Wuestenfeld, advising him that Evridge was poised to enter into settlement negotiations with the Jacksons because of AEI's refusal to provide him any assurance that it would cover any excess damages if the case went to trial. Coryell's letter asserted that AEI's conduct "is a textbook case of an insurer's bad faith conduct against its insured." (Emphasis omitted.)

On the eve of trial, Evridge entered into a settlement agreement with the Jacksons and confessed judgment for approximately $6 million. Per the settlement agreement, the Jacksons agreed to prosecute in Evridge's name all of his claims against AEI at the Jacksons' expense and discretion. Evridge agreed to pay over the proceeds of any recovery, less attorney's fees, to the Jacksons in satisfaction of the amount of the confessed judgment. The Jacksons also agreed to "indemnify and hold Evridge harmless from ... [any] award of attorney fees or costs which might be asserted against him by [AEI] if the case is lost." Judge Hunt approved the settlement agreement.

In a letter to Coryell, AEI claimed that it was not bound by the settlement agreement because its policy "bars an insured from settling directly with the injured party without [its] consent so long as [they] are providing a defense." AEI warned that "settlement of the case without [its] consent will constitute a breach of the insurance contract resulting in total forfeiture of coverage."

The Jacksons hired Baker Brattain, LLC, the firm that represented the Jacksons in the prior case against Evridge, to litigate the bad faith suit on behalf of Evridge. In September 1999 Evridge, individually and for the benefit of Laura and Dale Jackson, brought suit against AEI, Montgomery & Collins (M & C) (AEI's managing agent), and CHI of Alaska (Evridge's insurance broker). The complaint alleged, among other things, that AEI, CHI, and M & C acted in bad faith towards the insured, Evridge, by not advising him of the coverage his policy gave him, and by not giving him written assurance that it would cover any judgment in excess of the policy limits. The complaint also asserted negligence claims against each defendant.

Evridge moved for partial summary judgment, requesting dismissal of AEI's affirmative defenses. In a cross-motion for summary judgment, AEI argued that Evridge breached his policy's cooperation clause by entering into the settlement agreement and consent judgment without AEI's consent. Superior Court Judge Rene J. Gonzalez granted Evridge's summary judgment motion in part, striking AEI's affirmative defenses asserting failure to state a claim, collateral estoppel/res judicata, comparative negligence, failure to name indispensable parties, Rule 11 violations, and unclean hands. The superior court also denied AEI's cross-motion for summary judgment because it found unresolved issues of fact about whether AEI or Evridge breached the insurance policy. The superior court also granted M & C's motion for summary judgment, holding that because M & C was an agent of a disclosed principal—AEI—M & C was not vicariously liable to AEI's insured for any contracts made on behalf of AEI.

The breach of good faith and fair dealing claim went to trial in May 2001. Although Evridge does not argue that the verdict was contrary to the weight of the evidence, we note that at trial Evridge testified that he shared the view of Stockler that the Jacksons' claim was not worth $1 million. He also testified that he had thought the settlement and consent judgment were a mistake and a fraud. The jury returned a special verdict in favor of AEI, finding that AEI's refusal to settle the Jacksons' claims against Evridge for policy limits was not a breach of the duty of good faith and fair dealing. The court entered judgment against Evridge for

attorney's fees and costs in the amount of $101,194.68.

The Jacksons moved for a new trial, arguing that the court's special verdict form was improper. The trial court denied the Jacksons' motion. The Jacksons then moved to amend the judgment under Alaska Civil Rule 60 to require AEI to collect its attorney's fees and costs from the Jacksons instead of Evridge, the named plaintiff. The court denied this motion, observing that "the Jacksons chose to have Evridge bring the claim for their benefit, but in his name. A consequence of that action is that Evridge, not the Jacksons, is subject to any judgment for costs in the event the claim failed." The judgment against Evridge therefore stood.

Evridge and the Jacksons appealed to this court. AEI and CHI each filed cross-appeals. As of September 2001, the Jacksons had not yet indemnified Evridge, per their settlement agreement, for the outstanding attorney's fees and costs he owed AEI. AEI offered not to execute upon any of Evridge's personal assets if, in exchange, Evridge would assign his contractual right to be indemnified by the Jacksons to AEI, dismiss the appeal, and write a letter to William Brattain, the Jacksons' attorney, directing him to dismiss the appeal. In a letter to Evridge's personal attorney, Marshall Coryell, the Jacksons contended that Evridge did not have the authority to settle or dismiss the case. To avoid losing his personal assets, Evridge entered into a stipulation for dismissal with prejudice with AEI and CHI. Per the agreement, Evridge, AEI, and CHI stipulated "that all appeals relating to their respective interests, *inter alia*, in [*Evridge v. AEI*] may be dismissed with prejudice." We granted AEI and Evridge's motion to dismiss their respective cross-appeals. The order did not affect the Jacksons' appeal of Evridge's bad faith claim against AEI brought for their benefit.[1]

In March 2002 AEI moved this court to dismiss the Jacksons' appeal on the theory the Jacksons were not parties to the proceedings in the superior court. We denied the motion, and directed AEI to address the standing argument in its brief to this court. We now consider the Jacksons' appeal.

## III. DISCUSSION

### A. The Special Jury Verdict Form Was Not Improper.

 We conduct a de novo review of jury instructions and special verdict forms to which timely objection was made.[2] A jury instruction containing an erroneous statement of law is reversible error if it prejudices one of the parties.[3] Prejudice exists if we determine the verdict would have been different had the erroneous instruction not been given.[4]

The Jacksons argue that the special verdict form was erroneous because it "only presented half of their case to the jury." (Emphasis omitted.) They argue that their case rested on a two-part theory that AEI breached its duty of good faith and fair dealing by either (1) not settling for policy limits, or (2) not giving Evridge assurances that AEI would indemnify him for a judgment entered against him in excess of his policy limits if the case proceeded to trial.

The special verdict form submitted to the jury provided:

> Did American Equity Insurance Company breach its duty of good faith and fair dealing to James N. Evridge by its refusal to accept the Jacksons' $1 million policy limits demand?

The Jacksons argue that it was reversible error to submit a special verdict form that failed to ask the jury whether AEI breached its duty of good faith and fair dealing by not providing assurances to Evridge that it would cover an excess judgment. Their proposed special verdict form provided in part:

---

1. Following the dismissal, the Jacksons are the only remaining appellants. We therefore refer to the appellants as "the Jacksons."

2. *Reich v. Cominco Alaska, Inc.,* 56 P.3d 18, 25 (Alaska 2002).

3. *Id.*

4. *Id.*

1. Was American Equity's failure to accept the Jacksons' policy limits settlement demand unreasonable?

. . . .

2. Did American Equity breach its implied obligation of good faith and fair dealing by refusing to give Evridge reasonable assurances that it would protect his interests in the event the underlying case of *Jackson v. Evridge* went to trial and a jury returned a verdict in excess of his policy limits?

The Jacksons assert that they were entitled to a special verdict form consonant with their two-part theory because their theories were supported by evidence.

Although a trial court generally must give a jury instruction consonant with a party's theory where that theory is supported by evidence,[5] the Jacksons are not entitled to a jury instruction consonant with their case theory if that instruction incorrectly states the law.[6] The Jacksons therefore were entitled to a jury instruction encompassing the second prong of their theory only if the covenant of good faith and fair dealing imposes a legal duty on an insurer to give its insured assurances that it will cover an excess judgment entered against its insured. The Jacksons, however, cite no legal authority establishing that such a duty exists.

■ The covenant of good faith and fair dealing is implicit within every insurance contract; it requires "that neither party will do anything which will injure the right of the other to receive the benefits of the agreement."[7] When a plaintiff makes a policy limits demand, the covenant of good faith and fair dealing places a duty on an insurer to tender maximum policy limits to settle a plaintiff's demand when there is a substantial likelihood of an excess verdict against the insured.[8] This duty is grounded in the insurer's legal duty to act in good faith to protect the interests of the insured.[9]

When "there is a great risk of a recovery beyond the policy limits so that the most reasonable manner of disposing of the claim is a settlement which can be made within those limits, a consideration in good faith of the insured's interest requires the insurer to settle the claim."[10]

In such a situation, "an insurance company has the duty to determine 'the amount of a money judgment which might be rendered against its insured,' and 'to tender in settlement that portion of the projected money judgment which [it] contractually agreed to pay.'"[11]

■ The covenant of good faith and fair dealing also obligates an insurer to inform the insured of all settlement offers and to inform the insured of the possibility the injured claimant may recover a judgment in excess of the insured's policy limits.[12] Breach of the covenant of good faith and fair dealing exposes the insurer to a claim of bad faith and may expose it to liability for any excess judgment against its insured.

■ But the covenant of good faith does not broadly require an insurer to give its insured pre-trial assurances that it will cover an excess judgment against the insured if the insurer fails to accept a plaintiff's policy limits demand. The Jacksons' proposed theory would translate into a general duty to issue a pre-trial waiver of policy limits, and there is no such broad duty.

---

**5.** See *Chenega Corp. v. Exxon Corp.*, 991 P.2d 769, 780 (Alaska 1999); *Clary Ins. Agency v. Doyle*, 620 P.2d 194, 201 (Alaska 1980).

**6.** See 75A Am.Jur.2d *Trial* § 1142 (2002) (noting that "an instruction which correctly states the law and is based on competent evidence is not erroneous merely because not in consonance with the theories of either party").

**7.** *Guin v. Ha*, 591 P.2d 1281, 1291 (Alaska 1979).

**8.** *Schultz v. Travelers Indem. Co.*, 754 P.2d 265, 266–67 (Alaska 1988).

**9.** *Id.* at 267.

**10.** *Crisci v. Sec. Ins. Co.*, 66 Cal.2d 425, 58 Cal. Rptr. 13, 426 P.2d 173, 176 (1967) (quoting *Comunale v. Traders & Gen. Ins. Co.*, 50 Cal.2d 654, 328 P.2d 198, 201 (1958)).

**11.** *Bohna v. Hughes, Thorsness, Gantz, Powell & Brundin*, 828 P.2d 745, 768 (Alaska 1992) (quoting *Schultz*, 754 P.2d at 267).

**12.** *O.K. Lumber Co. v. Providence Washington Ins. Co.*, 759 P.2d 523, 525 (Alaska 1988).

In its order denying the Jacksons' new trial motion, the trial court noted that if a duty to provide assurances existed, that duty would only arise if there was a "reasonable likelihood" of recovery of an excess judgment against the insured.[13] We agree with the trial court's reasoning. If there were a duty to provide assurances that an insurer would cover an excess judgment, it would coincide with an insurer's duties to settle for policy limits. It would therefore arise only if an insurer's failure to settle were unreasonable, or in other words, if there were a reasonable likelihood the injured claimant would recover against the insured an amount exceeding the insured's policy limits.

■ Even if there was any error in failing to submit the Jacksons' alternate theory to the jury, it did not prejudice the Jacksons. AEI argued to the superior court that because the jury found that it was reasonable for AEI to reject the Jacksons' policy limits demand, the jury implicitly found "that there was not a reasonable likelihood of an excess judgment." The superior court agreed, stating that: "Instruction # 23 explained that the implied obligation of good faith imposes a duty on an insurer to 'accept a reasonable offer to settle ... if there is a reasonable likelihood of recovery.'"

The Jacksons argue, however, that the jury did not implicitly find that there was not a reasonable likelihood of an excess verdict. In support, the Jacksons cite Instruction No. 20, which listed four elements the Jacksons had to prove to establish that AEI breached its duty of good faith. Two of these elements are relevant here. The first required the Jacksons to prove that there was a reasonable likelihood of an excess judgment against Evridge. The second required the Jacksons to prove that AEI's failure to accept the Jacksons' policy limits demand was unreasonable. The Jacksons argue that "[t]he only reason for having these two separate elements was if each element could exist (or not exist) independent of the other." The Jacksons claim that the jury could have

found—as it did—that AEI's refusal to settle was reasonable without implicitly finding that there was no reasonable likelihood of excess recovery against Evridge, if the jury determined that AEI exercised bad judgment or negligence "in failing to recognize that likelihood."

The Jacksons also point to Instruction No. 22, which explained that bad faith does not mean "bad judgment or negligence," and Instruction No. 24, which explained that AEI would not be liable for its failure to settle if that failure was based on an "honest mistake." The Jacksons argue that "the jury could have concluded that there was a reasonable likelihood of an excess verdict but that AEI simply made an 'honest mistake.'"

The Jacksons' arguments are unpersuasive. The special verdict form required the jury to determine whether AEI's refusal to settle with the Jacksons was a breach of its duty of good faith and fair dealing. The accompanying jury instructions submitted by the court adequately informed the jury that, in order to determine whether AEI breached the duty of good faith and fair dealing, the jury would implicitly need to decide whether there was a reasonable likelihood of an excess judgment against Evridge. Instruction No. 23 correctly told the jury:

> The implied obligation of good faith and fair dealing in an insurance policy imposes a duty on an insurance company to accept a reasonable offer to settle a claim against the person insured if the offer is within the limits of the insurance coverage *and if there is a reasonable likelihood of recovery* against the person insured for an amount in excess of the insurance coverage.

(Emphasis added.)

Because the jury found that AEI's refusal to settle did not breach its duty of good faith and fair dealing, the jury implicitly concluded that there was no reasonable likelihood Evridge was exposed to a judgment exceeding his policy limits. Therefore, even if a liabili-

13. The trial court stated that the standard for deciding the reasonableness of AEI's refusal to settle with the Jacksons was whether there was a "reasonable likelihood," rather than a "substantial likelihood," of an excess judgment against

Evridge. The Jacksons do not object to the trial court's substitution. We will therefore rely in this case on the reasonable likelihood standard. *Cf. Schultz*, 754 P.2d at 266–67 (applying "substantial likelihood" standard).

ty insurer has a duty to provide assurances to its insured that it would cover an excess judgment, that duty would not arise under the circumstances of this case.

## B. The Superior Court Did Not Commit Plain Error by Giving Instruction No. 22

The Jacksons argue that the second paragraph of Instruction No. 22 incorrectly describes an insurer's duty of good faith in considering settlement offers. The second paragraph of Instruction No. 22 provided in part:

> Bad faith does not mean bad judgment or negligence, but means having a dishonest purpose through some motive of self-interest or ill will, or having maliciousness or hostile feelings towards its insured, or acting with reckless indifference to the interests or rights of its insured.

The Jacksons argue, instead, that "an insurance company is liable for an excess judgment if there is a substantial likelihood of an excess judgment-regardless of whether the *insurance company acted maliciously or negligently in failing to recognize that fact.*" They also argue that the instruction was plainly erroneous because at the very least a negligent failure to accept a reasonable policy limits demand would be *an actionable* breach of the obligation of fair dealing. To support this argument, the Jacksons cite *Continental Insurance Co. v. Bayless & Roberts, Inc.,* in which we held that "an insurer [ ] defending an action against the insured, is bound to exercise that degree of care which a man of ordinary prudence would exercise in the management of his own affairs ... irrespective of fraud or bad faith." [14]

 Because the Jacksons did not object to Instruction No. 22 at trial, they must demonstrate that it was plain error to give

that instruction.[15] Plain error is present when an "obvious mistake exists such that the jury instruction creates a 'high likelihood that the jury will follow an erroneous theory resulting in a miscarriage of justice.' "[16] To find plain error, we look to see if a correct jury instruction would have likely altered the result.[17] We place a heavy burden on the appellant to prove that the error was "highly likely determinative." [18]

 The Jacksons are not entitled to a plain error analysis, however, if their failure to object to Instruction No. 22 indicates a tactical choice.[19] During AEI's closing argument, AEI's trial counsel, William Wuestenfeld referred to the second paragraph of Instruction No. 22. He told the jury that

> [T]here is no evidence to suggest that American Equity acted in bad faith, that it was acting in some motive of self-interest or ill will. Rather, the evidence supports the instruction number 24, that American Equity had a bona fide ... good faith belief that the insurer had a good possibility of winning the suit.

Instead of objecting to AEI's definition of bad faith, the Jacksons' trial counsel also referred to Instruction No. 22 in his rebuttal argument, arguing to the jury that the instruction explained that "bad faith can be measured by the reckless indifference to the interests or the rights of the insured." The Jacksons' failure to object and their subsequent reliance on Instruction No. 22 in their rebuttal argument suggests that the Jacksons were fully aware of the language of Instruction No. 22, and that their failure to object was the result of sound tactical choice, thereby precluding a claim of plain error on appeal. If the Jacksons' counsel did not see fit to object under these circumstances, we hesitate to consider whether it was plain

---

**14.** 608 P.2d 281, 293 (Alaska 1980) (emphasis omitted) (quoting J. APPLEMAN, INSURANCE LAW AND PRACTICE § 4687, at 1780 (Berdal ed.1979)).

**15.** *Barrett v. Era Aviation, Inc.,* 996 P.2d 101, 105 (Alaska 2000).

**16.** *Id.* (quoting *Conam Alaska v. Bell Lavalin, Inc.,* 842 P.2d 148, 153 (Alaska 1992)).

**17.** *Conam Alaska v. Bell Lavalin, Inc.,* 842 P.2d 148, 153 (Alaska 1992).

**18.** *Id.* (emphasis omitted).

**19.** *Henry v. State,* 861 P.2d 582, 589 (Alaska App.1993) ("[W]e will not find plain error when there appears to have been a tactical reason to withhold objection."); *see also Massey v. State,* 771 P.2d 448, 453 (Alaska App.1989).

error for the trial court to give the instruction. AEI asserts on appeal that this language originated in an instruction Evridge proposed. It does appear that Evridge proposed the instruction and that AEI objected to it on the ground it was a first-party insurance instruction.

 Because the second paragraph of Instruction No. 22 incorrectly states the standard for finding bad faith in third-party insurance disputes, this paragraph should not have been submitted to the jury. The disputed language appears in a jury instruction discussed in *State Farm Fire & Casualty Co. v. Nicholson*, in which we held that an insured's cause of action against an insurer for breach of the duty of good faith and fair dealing sounded in tort in first-party insurance disputes.[20] The disputed paragraph may also have originated in a punitive damages claim. In any event, it erroneously described the standard for finding bad faith in this case. We disapprove of the submission of this language on the issue of bad faith in a third-party insurance dispute, the type of dispute we have here. But the error in giving Instruction No. 22 was not plain. Instruction No. 23 correctly states the law, and mitigates the presence of the second paragraph of Instruction No. 22.

## C. The Trial Court Did Not Err in Admitting Testimony of AEI's Expert, Ronald Mallen.

The Jacksons argue that the trial court also erred in allowing AEI to present expert testimony that was not disclosed in an expert report, per the requirements of Alaska Civil Rule 26(a)(2)(B). That rule provides in part that during discovery a disclosure of the identity of an expert witness must "be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor...." The Jacksons contend that the trial court allowed Ronald Mallen, over their objection, to testify about things not revealed in his expert report.

 We review the trial court's admission of expert testimony under an abuse of discretion standard.[21] We will reverse the trial court's decision to admit evidence "only when left with the definite and firm conviction that the trial court erred in its decision."[22]

 The Jacksons take issue with the portion of Mallen's expert disclosure report which states that AEI "was not obligated ... to inform Mr. Evridge that, as a guarantee, it would be so liable [for any excess judgment]." At trial, Mallen testified that AEI could not provide the assurance Evridge requested because giving such an assurance would breach AEI's reinsurance agreements. The Jacksons contend that, had Mallen properly disclosed before trial that AEI could not provide Evridge written assurances because it was in danger of breaching its reinsurance agreements, they could have conducted appropriate discovery on the issue to rebut Mallen's testimony at trial.

 We hold that there was sufficient disclosure of Mallen's expert opinion before he testified at trial. Although Mallen did not disclose a basis for his ultimate conclusion in his expert report, if there was any dissatisfaction with the report, the Jacksons should have filed a motion to compel further disclosures, or should have taken Mallen's deposition to discover how he arrived at his ultimate opinion. Moreover, Mallen's opinion was only part of AEI's evidence on this point. The report and subsequent trial testimony of another AEI expert witness, Robert Wainscott, echoed Mallen's conclusion that AEI's refusal to settle was reasonable, and that AEI was not obligated to give Evridge written assurances. Wainscott also testified that AEI had no duty to give assurances and that doing so would have threatened its relationship with its reinsurers. His expert report did not mention reinsurance either. The Jacksons, however, do not object to the trial court's admission of Wainscott's testimony. The admission of Wainscott's report and tes-

20. 777 P.2d 1152, 1154–57 (Alaska 1989).

21. *L.C.H. v. T.S.*, 28 P.3d 915, 919 (Alaska 2001).

22. *Id.* (quoting *Belluomini v. Fred Meyer, Inc.*, 993 P.2d 1009, 1016 (Alaska 1999)).

timony into evidence without objection renders harmless any possible error in admitting Mallen's disputed testimony.

### D. The Trial Court's Ruling on the Offset Issue Did Not Prejudice the Jacksons.

█ Finally, the Jacksons argue that the trial court erred in ruling that Evridge would have been entitled to an offset of any settlement proceeds paid to the Jacksons to the extent that their total recovery exceeded their total damages. Evridge asked the trial court to take judicial notice under Alaska Evidence Rule 202, and instruct the jury, that at the time of the Jacksons' July 25, 1997 accident Alaska followed Restatement (Third) of Torts § 16 cmt. e (2000), which provides that an injured person can recover more than 100 percent of his or her damages by separately suing two severally liable defendants. Acknowledging that this court generally disfavors double recovery, the trial court denied Evridge's motion for judicial notice, and held that an offset was permissible for the settlement proceeds from Great Alaska because the proceeds were from a non-collateral source and paid by a joint tortfeasor.[23]

The Jacksons argue that the trial court's ruling thwarted their attempt to argue at trial that AEI had erroneously undervalued their claims against Evridge. The Jacksons assert that they had planned to present evidence that AEI believed it was entitled to a first-dollar offset for the $1.2 million Great Alaska previously paid, and the $185,000 the Jacksons received under their underinsured motorist coverage. The Jacksons argue on appeal that "the ruling caused [them] to restrict and curtail their arguments that AEI had misapplied the law in evaluating the likely amount of the judgment against Evridge."

The real purpose of the request was to establish as a matter of law that AEI breached its duty to Evridge to accurately assess his exposure by assuming his exposure would be reduced by anything paid to the Jacksons on behalf of Great Alaska, the other tortfeasor. But the trial court's ruling did not prevent the Jacksons from offering evidence that AEI improperly evaluated Evridge's exposure. They introduced evidence about how AEI evaluated that exposure, and introduced expert testimony that AEI breached its duty when it allegedly assumed payments on behalf of Great Alaska would reduce Evridge's damages exposure. They have not explained on appeal what evidence the court's ruling prevented them from offering, and have not demonstrated how the ruling kept them from trying to convince the jury that AEI breached its duty to Evridge.[24]

---

**23.** The Jacksons were injured on July 25, 1997. As of that date, AS 09.17.080 provided:

> **Apportionment of damages.** (a) In all actions involving fault of more than one party to the action, including third-party defendants and persons who have been released under AS 09.16.040, the court, unless otherwise agreed by all parties, shall instruct the jury to answer special interrogatories or, if there is no jury, shall make findings, indicating
>
> (1) the amount of damages each claimant would be entitled to recover if contributory fault is disregarded; and
>
> (2) the percentage of the total fault of all of the parties to each claim that is allocated to each claimant, defendant, third-party defendant, and person who has been released from liability under AS 09.16.040.
>
> (b) In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault, and the extent of the causal relation between the conduct and the damages claimed. The trier of fact may determine that two or more persons are to be treated as a single party if their conduct was a cause of the damages claimed and the separate act or omission of each person cannot be distinguished.
>
> (c) The court shall determine the award of damages to each claimant in accordance with the findings, subject to a reduction under AS 09.16.040, and enter judgment against each party liable. The court also shall determine and state in the judgment each party's equitable share of the obligation to each claimant in accordance with the respective percentages of fault.
>
> (d) The court shall enter judgment against each party liable on the basis of several liability in accordance with that party's percentage of fault.

AS 09.17.080 was amended in 1997, but that amendment only affected causes of action accruing on or after August 7, 1997. Ch. 26, § 55, SLA 1997.

**24.** Cf. Alaska R. Evid. 103(a)(2) (precluding parties from challenging trial court rulings that have the effect of excluding evidence unless "the sub-

The Jacksons also claim that AEI was able to unfairly "whipsaw" one of their experts, Bruce Gagnon, on cross-examination by asking him whether the trial court "disagreed" with the expert's opinion that a plaintiff can "double recover for the same things...." But the Jacksons did not object to this brief exchange and requested no curative instruction. Moreover, their expert's admission that this was a "debatable issue" is at odds with a contention that as a matter of law AEI must have breached its duty by allegedly thinking the Jacksons could not recover twice for the same things. Finally, the expert's subsequent testimony on cross-examination continued to express his opinions that AEI should not have assumed an offset.

We hold that the Jacksons have not demonstrated that the trial court's ruling actually impaired their ability to argue that AEI undervalued their claims against Evridge. We therefore need not reach the substance of the underlying several liability issue.

## IV. CONCLUSION

We therefore AFFIRM the judgment.[25]

MATTHEWS, Justice, not participating.

stance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked").

**25.** Because we uphold the jury verdict, we do not need to consider AEI's alternative argument that the Jacksons, as unnamed parties to the suit below, do not have standing to bring this appeal. We also do not need to address AEI's argument that because the duty to pay an excess judgment would only arise after a judgment was entered, and the Jacksons' underlying case never proceeded to trial, Evridge's bad faith claim was not mature.