**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ALLSTATE INSURANCE COMPANY,
           *Plaintiff-Appellee,*

v.

CHARLES HERRON,
           *Defendant-Appellant.*

No. 09-35203

D.C. No.
3:04-cv-00043-TMB

OPINION

Appeal from the United States District Court
for the District of Alaska
Timothy M. Burgess, District Judge, Presiding

Argued and Submitted
July 30, 2010—Anchorage, Alaska

Filed March 10, 2011

Before: Mary M. Schroeder, Diarmuid F. O'Scannlain and
Richard R. Clifton, Circuit Judges.

Opinion by Judge O'Scannlain

## COUNSEL

Mark A. Sandberg, Wilkerson Hozubin & Burke, PC, Anchorage, Alaska, argued the cause for the appellant and filed the briefs.

Gary Zipkin, Wilkerson Hozubin & Burke, PC, Anchorage, Alaska, argued the cause for the appellee. Mark Wilkerson, Wilkerson Hozubin & Burke, PC, filed the brief.

## OPINION

O'SCANNLAIN, Circuit Judge:

We must decide, among other issues, whether an insurance company's failure to settle a claim against its insured by a

claimant's stated settlement deadline constitutes a breach of the insurer's duty of good faith and fair dealing under Alaska law.

I

A

On September 14, 2002, Charles Herron was involved in a single-car accident, in which his passenger Angelina Trailov was severely injured.[1] At the time, Allstate Insurance Company ("Allstate") provided car insurance to Herron under a policy obtained by Herron's parents, which provided a maximum of $100,000 bodily injury coverage for each person injured.

Allstate learned of Herron's accident two days after it occurred and began its investigation that same day. Allstate contacted Herron's mother and discussed the scope of Herron's insurance but unsuccessfully attempted to contact Trailov at the hospital to which she had been airlifted. A week later, Allstate sent a letter to Herron's parents, advising them that it was working on the claim. Herron's father faxed a copy of the letter to Herron's attorney, who in turn faxed a copy of the letter to Trailov's attorney, Michele Power.

Shortly thereafter, Allstate sent a letter to Power requesting a complete description of Trailov's injuries, information regarding Trailov's treating physicians and any ongoing treatment she was receiving, and access to Trailov's medical records or bills as Power received them. Allstate received the medical release form signed by Trailov's mother, Mary Kenick, as well as a letter requesting a copy of Herron's insurance policy.

---

[1] We take the facts of this case as stipulated by the parties in the district court.

In February of 2003, Power sent Allstate a letter demanding that it pay its full policy limits for Trailov's injury. The letter did not specify a deadline for Allstate's response. Allstate acknowledged receipt of Power's letter, and forwarded Herron a copy of the letter, informing him that his policy does not cover punitive damages. Herron's attorney responded insisting that Allstate accept Power's policy-limits offer and stating that if it refused to do so, Herron would look to Allstate for all damages awarded, including punitive damages.

In April, Power again wrote to Allstate, stating that Power's offer to settle at policy limits would be revoked on May 16, 2003 and that Power would file a lawsuit on Trailov's behalf "unless there is some discussion regarding pre-filing resolution." On May 9, Allstate acknowledged receipt of Power's letter, and stated that Allstate anticipated responding by May 16. On May 12, Allstate paid Trailov $25,000 to compensate a portion of her medical expenses. On May 16, Allstate faxed a letter to Power indicating that it had not yet completed its investigation, but that it would do so and respond to her settlement offer by the end of the month. True to its word, Allstate faxed Power a letter offering to settle at Herron's $100,000 policy limit in addition to $12,500 in attorneys' fees on May 30. That same day, Allstate received a letter from attorney Douglas Johnson indicating that Allstate had failed to meet Power's deadline and that Johnson had been retained by Trailov as co-counsel to file suit against Allstate.

B

Allstate filed a complaint against Herron in the U.S. District Court for the District of Alaska, seeking declaratory relief. Allstate sought a declaration that "its good faith attempt to settle Trailov and Kenick's claims satisfied its obligation to its insured," and that it "is not obligated to pay any portion of the confessed judgment that exceeds the limit of the bodily injury coverage afforded Herron under the Policy." But before he was served with the complaint in the federal lawsuit, Her-

ron confessed to judgment in the amount of $1,937,500 against himself in favor of Kenick and Trailov in Alaska Superior Court and assigned all of his rights against Allstate to Kenick and Trailov. In exchange, Kenick and Trailov entered into a covenant not to execute the judgment against Herron's personal assets. Kenick and Trailov then initiated a lawsuit in Alaska state court against Allstate, attempting to collect under Herron's assigned rights.

In light of Herron's actions, Allstate amended its complaint, seeking additional declarations that (1) Herron breached the cooperation clause of the insurance contract by consenting to entry of judgment and assigning his rights without Allstate's permission;[2] (2) Herron's breach was not excused by any prior material breach by Allstate; (3) Herron's breach voided the insurance contract; and (4) either Allstate's liability is limited to the amount of bodily injury coverage or, in the alternative, Herron's breach voided the contract and all liability coverage.

Herron responded with a motion requesting that the district court decline jurisdiction over Allstate's suit or, in the alternative, stay proceedings. Herron argued that, because he had assigned any claims he may have had against Allstate to Kenick and Trailov, Herron was no longer a real party in interest to the controversy and Allstate's action should therefore be prosecuted in state court along with Kenick and Trailov's

---

[2]The insurance agreement's cooperation clause states:

> When [Allstate] ask[s], an insured person must cooperate with [Allstate] in the investigation, settlement and defense of any claim or lawsuit. If [Allstate] ask[s], that person must also help [Allstate] obtain payment from anyone who may be jointly responsible. [Allstate] can't be obligated if an insured person voluntarily takes any action or makes any payments except as specified in this policy.

This provision effectively bars Herron from settling any covered claims against him without Allstate's authorization.

nonremovable tort claims. The district court denied the motion and retained jurisdiction over Allstate's request for declaratory relief, concluding that jurisdiction was proper because the suit did not involve any unsettled areas of state law, nor did it risk duplicative litigation. Herron then filed a motion to dismiss Allstate's suit as moot or, in the alternative, to substitute Kenick and Trailov for himself as party defendants. The district court again denied Herron's motion, although it suggested that Allstate consider adding Kenick and Trailov as defendants.

Allstate and Herron each filed motions for summary judgment, both of which the district court denied.[3] Before trial, Allstate filed a motion in limine seeking to exclude evidence of various instances of purported bad-faith behavior. The district court had previously concluded that Herron suffered no harm as a result of these purported transgressions, and granted Allstate's motion.

After a six-day trial, the court submitted a single question to the jury: "Considering all the facts and circumstances contained in the evidence submitted to you, did Allstate act reasonably by offering policy limits on May 30, 2003?" The jury answered, "Yes." After the jury delivered its verdict, Allstate's counsel indicated that he would submit a proposed judgment to the court, and the judge replied, "Okay." But the next day, before Allstate filed its proposed judgment, the district court entered a judgment indicating only that "Allstate did act reasonably by offering policy limits on May 30, 2003." Less than a week later, Allstate filed a motion to amend the judgment to reflect several additional declarations that Allstate sought in its complaint. Namely, Allstate sought to amend the judgment to state:

---

[3]The order denying Allstate's motion for summary judgment was published. *See Allstate Ins. Cos. v. Herron*, 393 F. Supp. 2d 948 (D. Alaska 2005).

1. The jury returned a verdict in favor of Allstate on June 11, 2008, finding that under all the facts and circumstances Allstate acted reasonably by offering policy limits on May 30, 2003.

2. It is undisputed that Herron breached the insurance contract by consenting to entry of judgment and assigning his rights without Allstate's consent.

3. Pursuant to the jury's verdict, Herron's breach was not excused by any prior breach by Allstate.

4. Herron's breach voided the insurance policy's liability coverage.

5. Herron's assignment of rights to Trailov and Kenick is null and void because Herron had no rights to assign as of the date of assignment.

The district court granted Allstate's motion, and filed the amended judgment as requested.

Herron timely appeals.

## II

Herron first claims that the district court improperly exercised jurisdiction over Allstate's suit for declaratory relief. Under the Declaratory Judgment Act, a district court may "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a); *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1222 (9th Cir. 1998) (en banc). So long as the court's exercise of jurisdiction over the suit "passes constitutional and statutory muster," the district court has discretion to determine whether maintaining jurisdiction over the declaratory action would be appropriate. *Dizol*, 133 F.3d at 1223. In making such a determination, a

district court is to consider a variety of factors, including whether retaining jurisdiction would: (1) involve the needless determination of state law issues; (2) encourage the filing of declaratory actions as a means of forum shopping; (3) risk duplicative litigation; (4) resolve all aspects of the controversy in a single proceeding; (5) serve a useful purpose in clarifying the legal relations at issue; (6) permit one party to obtain an unjust res judicata advantage; (7) risk entangling federal and state court systems; or (8) jeopardize the convenience of the parties. *Id.* at 1225 & n.5. Because the district court "is in the best position to assess how judicial economy, comity and federalism are affected in a given case," *id.* at 1226, we review the district court's decision to retain jurisdiction over a declaratory judgment action for abuse of discretion, *id.* at 1223.

**[1]** Here, the district court did not abuse its discretion by maintaining jurisdiction over Allstate's declaratory judgment action. This case presents a straightforward contract dispute between Allstate and Herron, over which the district court has jurisdiction based on the parties' diversity.[4] 28 U.S.C. § 1332. Allstate's complaint seeks a declaration merely that Herron breached the insurance contract and voided its coverage by consenting to the entry of judgment against him and by assigning his contractual rights against Allstate. The district court decided no issues of Alaska law outside of that defining Herron and Allstate's contractual relationship. There is thus little concern that Allstate's declaratory judgment action entangled federal and state court systems or that the district court allowed Allstate unfairly to select a favorable or inconvenient forum for determining its rights under the contract. Moreover, Herron never initiated his own action against Allstate that would risk duplicative litigation of these same contractual rights. In short, we see no concern that would have

---

[4]Herron is a resident of Alaska and Allstate is incorporated in and maintains its principal place of business in Illinois.

required the district court to refuse to exercise jurisdiction over Allstate's action.

Herron counters that, under the guise of a contract suit, Allstate has in fact sought a declaration of its defense to the tort suit filed by Kenick and Trailov in Alaska state court. In particular, he contends that the jury's finding that under "all facts and circumstances, . . . Allstate act[ed] reasonably by offering policy limits on May 30, 2003," is simply a statement of Allstate's nonliability to Kenick and Trailov's tort claims. Herron argues that the district court therefore erred by allowing Allstate to use this declaratory judgment action to handpick its preferred forum for litigating the merits of Kenick and Trailov's state tort action. *Cf. Cunningham Bros., Inc. v. Bail*, 407 F.2d 1165, 1167-68 (7th Cir. 1969) ("[T]o compel potential personal injury plaintiffs to litigate their claims at a time and in a forum chosen by the alleged tort-feasor would be a perversion of the Declaratory Judgment Act.").

**[2]** But Herron misunderstands the connection between the action here and Kenick and Trailov's tort suit against Allstate. The issues in this suit and the tort suit overlap solely because Kenick and Trailov's rights against Allstate are entirely derivative of Herron's rights under his insurance agreement. The jury's declaration of Allstate's reasonableness pertains to Alaska law defining an insurer's contractual obligations to its insured, not tort law. *See Continental Ins. Co. v. Bayless & Roberts, Inc.*, 608 P.2d 281, 293 (Alaska 1980). That declaration may well be fatal to Kenick and Trailov's tort claims against Allstate, but only because an unexcused breach of the contract by Herron may have thus prevented him from assigning any rights against Allstate to Kenick and Trailov in the first place. At bottom, Allstate's suit sounds in contract, not tort, regardless whether the merits of this action have become entwined with a defense Allstate may potentially raise to Kenick and Trailov's derivative tort action. Accordingly, we are satisfied that the district court did not abuse its discretion by

maintaining jurisdiction over Allstate's declaratory judgment action.

### III

Herron next contends that the district court erred by refusing to direct a verdict that Allstate materially breached the insurance contract when it failed to accept Power's offer to settle at policy limits by May 16, 2003. We review the district court's denial of a motion for directed verdict de novo. *Oglesby v. S. Pac. Transp. Co.*, 6 F.3d 603, 605 (9th Cir. 1993). To succeed on his claim, Herron must demonstrate that the evidence, when viewed in the light most favorable to Allstate, requires a rational juror to conclude that Allstate materially breached the contract by offering to settle at policy limits on May 30, 2003. *See Maheu v. Hughes Tool Co.*, 569 F.2d 459, 469 (9th Cir. 1977).

**[3]** In Alaska, "[w]hen a plaintiff makes a policy limits demand, the covenant of good faith and fair dealing places a duty on an insurer to tender maximum policy limits to settle a plaintiff's demand when there is a substantial likelihood of an excess verdict against the insured." *Jackson v. Am. Equity Ins. Co.*, 90 P.3d 136, 142 (Alaska 2004). This obligation stems from an insurer's general "duty to act in good faith to protect the interests of the insured," *id.*, and it requires the insurer to "exercise not only good faith, but also ordinary care and reasonable diligence and caution," *Continental Ins. Co.*, 608 P.2d at 293 (internal quotation marks omitted). If an insurer unreasonably refuses to settle at policy limits, "it has materially breached its contractual obligation to the insured . . . and cannot escape liability on the ground that the insured failed to comply with other terms of the contract subsequent to [the insurer's] own breach." *Grace v. Ins. Co. of N. Am.*, 944 P.2d 460, 464 (Alaska 1997) (ellipsis in original) (internal quotation marks omitted). Thus, if Allstate breached its obligation to tender policy limits in response to Power's settlement offer, Herron would be entitled to coverage, even in

excess of his policy, for his liability to Trailov and Kenick, regardless of any subsequent breach on his part. *See Jackson*, 90 P.3d at 142; *Grace*, 944 P.2d 464-65.

Because the parties stipulated that Allstate *could have* determined that Herron's liability exceeded the limits of his insurance policy by May 16, 2003, Herron contends that, as a matter of law, Allstate breached its duty to settle at policy limits by failing to meet Power's May 16 deadline. But the parties' stipulation did not preclude a rational jury from finding that Allstate nevertheless acted reasonably by offering to settle at policy limits only two weeks later. In essence, the parties' stipulation did not require a jury to conclude that Allstate *should have* determined Herron's liability to exceed the policy limits and *should have* offered to settle by May 16.

**[4]** Indeed, the jury found that Allstate's decision to offer to settle on May 30, 2003 was reasonable, and we have no cause to question the jury's conclusion based upon the record before us. Allstate began its investigation two days after Herron's accident occurred and was consistently in contact with Power throughout the process. Although Power placed a May 16 deadline on her offer to settle, her language was not steadfast; rather, she merely stated that by the deadline there must be "some discussion regarding pre-filing resolution." Allstate twice responded to this settlement offer by the deadline, and it even paid a portion of Trailov's medical bills on May 12. On May 16, Allstate stated that it would have a final answer by the end of the month, and on May 30, Allstate in fact accepted Power's offer to settle at policy limits.

**[5]** Viewing this evidence in the light most favorable to Allstate, it is not clear that Allstate failed to comply with the terms of Power's deadline, let alone that it failed reasonably to offer to settle at policy limits. A rational jury could find that Allstate acted reasonably. Because Herron is not entitled to judgment that Allstate breached its duty of good faith and

fair dealing, the district court did not err in refusing to grant Herron's motion for a directed verdict.[5]

IV

**[6]** Herron next contends that the district court improperly excluded evidence at trial relating to alleged contract breaches by Allstate other than its failure to accept Power's settlement offer by May 16, 2003. In particular, Herron contends that the district court should have permitted him to introduce evidence that Allstate (1) violated its own procedures and Alaska insurance regulations in investigating Herron's accident, (2) never sent Herron a letter notifying him of his potential for excess liability, (3) failed to investigate properly the claims against Herron, and (4) failed to advise Herron and his counsel of Allstate's settlement negotiations. The district court excluded evidence relating to each of these claims under Federal Rules of Evidence 401 and 403. We review the district court's evidentiary decisions for abuse of discretion, and "the appellant is . . . required to establish that the error was prejudicial." *Tritchler v. Cnty. of Lake*, 358 F.3d 1150, 1155 (9th Cir. 2004).

**[7]** Standing alone, none of these additional alleged breaches would entitle Herron to prevail on the merits of this action. Under Alaska law, only a *material* breach by an insurer excuses an insured's subsequent breach. *Great Divide Ins. Co. v. Carpenter ex rel. Reed*, 79 P.3d 599, 608-10 (Alaska 2003). "[A] material breach is one that will or may

---

[5]Herron also claims that the district court erred by not granting summary judgment in his favor on this issue. But "this court will not engage in the pointless academic exercise of deciding whether a factual issue was disputed after it has been decided." *Banuelos v. Constr. Laborers' Tr. Funds for S. Cal.*, 382 F.3d 897, 903 (9th Cir. 2004). Whether an insurer acted in good faith is normally a factual issue for the jury to decide, *see Jackson*, 90 P.3d at 141-44, and the jury's finding that Allstate "act[ed] reasonably by offering policy limits on May 30, 2003" thus defeats Herron's claim.

result in the other party not receiving substantially what [that party] bargained for." *Machado v. State*, 797 P.2d 677, 683 (Alaska Ct. App. 1990) (internal quotation marks omitted) (second alteration in original). The breach must have an adverse impact on the relationship between the parties. *Great Divide*, 79 P.3d at 610. Herron does not argue that any of these additional breaches adversely impacted him or his relationship with Allstate. Herron argues instead that *any* breach by an insurer excuses an insured's subsequent breach. But Herron glosses over the materiality requirement, and his argument finds no support in Alaska law. Without a showing of prejudice, none of these additional breaches could have been "material," and thus, under Alaska law, none of these additional breaches could have excused Herron's subsequent breach.[6]

[8] Second, even if they occurred, these alleged breaches shed little light on whether Allstate materially breached the contract by failing to accept Power's settlement offer by May 16, 2003. In assessing that claim, the only relevant considerations are when Allstate should have known that Herron's liability was likely to exceed policy limits and, correspondingly, when Allstate reasonably should have offered to settle at such limits. Whether Allstate followed its internal procedures or provided adequate information to Herron is hardly relevant to

---

[6]On these same grounds, we reject Herron's argument that the district court should have granted summary judgment or a directed verdict in his favor on his claim that Allstate breached its duty to notify him of his potential for excess liability, *see Jackson*, 90 P.3d at 142. Without considering whether Allstate was required, as Herron claims, to send him a letter expressly informing him of his potential for excess liability, we conclude that any breach of such duty is irrelevant to the present case. Herron does not argue that he suffered any harm as a result of Allstate's purported breach, and thus, any breach could not have been material. The district court did not err by refusing to grant summary judgment or a directed verdict on this point, as it would not have affected the conclusion that Herron's breach of the contract was not excused by a prior material breach by Allstate.

such considerations. At most, these assorted breaches may suggest that Allstate's handling of Trailov's claim was somewhat out of the ordinary. But Herron was allowed to present ample evidence regarding Allstate's handling of the claim.[7] Whatever minimal probative value that evidence of these additional allegations would have with respect to the reasonableness of Allstate's settlement decision is greatly outweighed by the misleading and potentially prejudicial effect that discussion of other "breaches" may have on a jury. *See* Fed. R. Evid. 403. The district court thus did not abuse its discretion in excluding evidence of these purported breaches.

V

**[9]** Finally, we consider whether the district court abused its discretion by granting Allstate's motion to amend the judgment. Under Federal Rule of Civil Procedure 59(e), a party may move to have the court amend its judgment within twenty-eight days after entry of the judgment. "Since specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion in granting or denying the motion." *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999) (en banc) (per curiam) (internal quotation marks omitted). But amending a judgment after its entry remains "an extraordinary remedy which should be used sparingly." *Id.* (internal quotation marks omitted). In general, there are four basic grounds upon which a Rule 59(e) motion may be granted: (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law. *Id.*

---

[7]For example, Herron was allowed to present evidence regarding relevant industry standards for handling a claim, various internal Allstate procedures, documents related to Allstate's investigation and evaluation, and even expert testimony assessing Allstate's actions.

A

**[10]** A court considering a Rule 59(e) motion is not limited merely to these four situations, however. *See id.* at 1255 (stating that under unusual circumstances an amendment outside the listed situations may be appropriate). For instance, Rule 59(e) amendment may be particularly appropriate where, as here, the amendment reflects the purely clerical task of incorporating undisputed facts into the judgment. *See Molnar v. United Techs. Otis Elevator*, 37 F.3d 335, 337-38 (7th Cir. 1994) (holding that the district court did not abuse its discretion by amending a judgment to reflect the jury's conclusion that the defendant's conduct was willful). Such an amendment does not raise the concern that a party has abused Rule 59(e) to "raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). This is particularly true in this case, as Allstate sought to amend the judgment specifically to reflect the relief sought in its complaint, and the district court previously stated on the record that it would allow Allstate to submit a proposed form of judgment.

**[11]** Accordingly, the district court did not abuse its discretion by adding paragraphs (2) and (3) of the amended judgment. Paragraph (2) adds only the undisputed fact that Herron breached the insurance contract by consenting to entry of judgment against him and assigning his rights without Allstate's consent. Herron readily admits that this action was a material breach of the contract's cooperation clause, and at trial, the only question regarding this breach was whether it was excused by a prior material breach by Allstate. Paragraph (3) adds that Herron's breach indeed was not excused by any prior material breach. This addition flows directly from the jury's finding that Allstate acted reasonably in offering to settle on May 30, 2003. Because Allstate acted reasonably, it did not breach its duty of good faith and fair dealing to Herron,

and Herron alleges no other material breaches which would have excused his own breach.

## B

**[12]** Paragraph (4) of the amended judgment, however, adds more than undisputed facts. Paragraph (4) states, "Herron's breach [of the cooperation clause] voided the insurance policy's liability coverage." Under Alaska law, " 'an insured's breach of [a] cooperation clause relieves a *prejudiced* insurer of liability under the policy.' " *Grace*, 944 P.2d at 464 (quoting *Ariz. Prop. & Cas. Ins. Guar. Fund v. Helme*, 735 P.2d 451, 458-59 (Ariz. 1987)) (alteration in original) (emphasis added). In order to "satisfy the consumer's reasonable expectation that [insurance] coverage will not be defeated on arbitrary procedural grounds," an insurance company must establish that it suffered the prejudice that a cooperation clause was intended to avoid in order to escape liability based on the insured's breach of the clause. *Estes v. Alaska Ins. Guar. Ass'n*, 774 P.2d 1315, 1318 (Alaska 1989). The insurer bears the burden of proving such prejudice. *Weaver Bros., Inc. v. Chappel*, 684 P.2d 123, 126 (Alaska 1984).

**[13]** Here, Allstate did not show that it suffered prejudice as a result of Herron's breach, and the jury did not consider the issue of prejudice to Allstate. Indeed, there is good reason to believe that Allstate was not prejudiced by Herron's confession of judgment, given that Allstate determined Herron's liability to be easily in excess of its policy and in fact tendered a policy limits settlement to Kenick and Trailov. Regardless, the narrow verdict issued by the jury did not reach the issue of Allstate's nonliability under its policy to Herron.

Allstate contends that a jury need not consider whether Herron's breach prejudiced Allstate, because such prejudice has been stipulated by Herron. Namely, Allstate argues that Herron's stipulation that his consent to the entry of judgment in Trailov's favor "was a *material breach* of the cooperation

clause in his insurance contract," presumes that such breach caused prejudice to Allstate. As discussed, *supra* Part IV, a material breach is one that has an "adverse impact on the relationship between the insurer and the insured." *Great Divide*, 79 P.3d at 610 (internal quotation marks omitted). Allstate argues that Herron's stipulation therefore includes the fact that Allstate suffered prejudice, and thus that the court may presume such prejudice occurred even without submitting the issue to a jury.

**[14]** We are not persuaded by Allstate's argument. The prejudice required to relieve an insurer of its liability under the contract following a breach of a cooperation clause is not the same as the prejudice required to show that a particular contract breach was "material." "[C]ooperation clauses should . . . be reviewed on the basis of whether their application in a particular case advances the purpose for which they were included in the policy." *Estes*, 774 P.2d at 1318. To relieve its liability, Allstate "must establish that it suffered as a result of [Herron's breach] such prejudice as the [cooperation clause] was intended to avoid," *id.*, not simply that the breach had an "adverse impact" on their relationship. Indeed, without such a showing, Herron's stipulation that his action "was a material breach *of the cooperation clause*," does not necessarily include an admission that such breach was a material breach of *the insurance contract itself*. This distinction is pivotal, and finding a material breach of the contract itself is fundamental to concluding that Allstate was fully relieved of its liability under the insurance policy. *Cf. id.* (stating that to allow a non-prejudiced insurer to escape liability simply because the insured breached a cooperation clause would be to void coverage "on arbitrary procedural grounds"). Because the issue of prejudice to Allstate was neither stipulated nor considered by the jury, the district court abused its discretion by amending the judgment in paragraph (4) to state that "Herron's breach voided the insurance policy's liability coverage."

## C

**[15]** Paragraph (5) of the amended judgment, which states that Herron's assignment of rights to Kenick and Trailov is "null and void because [he] had no rights to assign as of the date of the assignment," is derivative of paragraph (4)'s statement that Herron's actions voided his insurance policy. But because Allstate remains liable to Herron within the insurance policy's limits, Herron retained assignable rights against Allstate to the extent of that liability. Accordingly, the addition of paragraph (5) was erroneous as well.

## VI

The judgment of the district court is

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Each party shall bear its own costs.