Zebuleon WHITNEY, Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee.

No. S–13942.

Supreme Court of Alaska.

Aug. 19, 2011.

in excess of the maximum coverage of the driver's insurance policy. The insurance company responded with an offer to tender policy limits, which the bicyclist refused. After a series of court proceedings in both state and federal court, the driver sued his insurance company, complaining in part that his insurance company had breached its duty to settle. The insurance company moved for partial summary judgment on a portion of the duty to settle claims. The superior court granted the motion. The parties then entered a stipulation by which the driver dismissed all remaining claims, preserving his right to appeal,[1] and final judgment was entered in the insurance company's favor. Because the insurance company's rejection of the bicyclist's settlement demand and its responsive tender of a policy limits offer was not a breach of the duty to settle, we affirm the superior court's grant of summary judgment to that extent. But because the superior court's order exceeded the scope of the insurance company's motion for partial summary judgment, we reverse the superior court's order to the extent it exceeded the narrow issue upon which summary judgment was appropriate. We remand for further proceedings concerning the surviving duty to settle claims.

## II. FACTS AND PROCEEDINGS

On July 6, 2006, Zebuleon Whitney was leaving a gas station in his Dodge Ram pickup. He pulled out in front of a bicyclist, Michael Giannechini, whom he had seen coming down the road to Whitney's left. The vehicles collided and Giannechini was seriously injured. The parties do not dispute that Whitney was the primary cause of the accident.

Whitney's Dodge was insured by an automobile liability policy issued by State Farm, which had a policy limit of $100,000 for injury to a single person, and $300,000 per occurrence. However, a family may have multiple State Farm insurance policies, as State Farm issues separate policies for each vehicle. Giannechini's counsel, Daniel Libbey, knew

Mark A. Sandberg and Peter A. Sandberg, Wuestenfeld & Corey, Anchorage, for Appellant.

James K. Wilkens, Bliss, Wilkens & Clayton, Anchorage, for Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

*OPINION*

CARPENETI, Chief Justice.

## I. INTRODUCTION

The driver of a pickup truck collided with a bicyclist, seriously injuring the bicyclist. The bicyclist sought a settlement agreement

---

1. If the driver were able to overturn the partial summary judgment order on appeal, he would be able to reinstate most of the dismissed claims.

that Whitney's parents owned several vehicles, and that Whitney had a brother who was part of the same household. On April 5, 2007, Libbey sent a letter entitled "Settlement Offer" to State Farm counsel John Burns, who had been retained by State Farm to represent Whitney. The letter acknowledged receiving copies of the insurance policies for the Whitney family's other vehicles, and requested a copy of an expired policy on one such vehicle. The letter also stated Libbey's understanding that State Farm issues a separate policy on each vehicle it insures, and that "[i]f Zebuleon is not a named insured on these policies, then he is defined as a covered insured (as a resident relative) and entitled to stacking of additional coverage for his liability for this accident." Libbey offered no legal basis for this conclusion.

The letter offered to settle "any and all liability claims" against Whitney "for disbursal of policy limits ... for each and every applicable policy of insurance." It gave State Farm 30 days in which to respond. The letter also stated that "[i]f this offer is rejected or lapses, *no further offers to settle for policy limits will be made or accepted.*" While the offer was open, State Farm did not tell Whitney of the settlement offer.

On May 2, 2007, a State Farm claim representative responded to Libbey's letter. The letter stated that "[t]he State Farm policy does not allow for the stacking of liability coverages," and "[i]f an insured has more than one State Farm policy, the greater of the liability limits will apply." State Farm offered to settle for the policy limit of $100,000, plus applicable interest and attorney's fees through May 4, for an estimated total of $120,918.77.

Giannechini did not accept State Farm's policy limits offer. In September 2007, Giannechini filed suit against Whitney. State Farm wrote to Whitney to inform him he had been sued and that State Farm had retained Burns to defend him. It also advised him that the lawsuit could exceed the policy limits of State Farm's policies. State Farm evaluated the claim as being worth between $375,000 and $475,000.

In October 2008, the parties reached a settlement agreement. Whitney allowed entry of judgment of $950,000 against himself in exchange for Giannechini's agreement not to execute on the judgment against Whitney. Whitney also assigned rights to Giannechini to pursue State Farm for any claims arising out of the motor vehicle accident.

In the meantime, State Farm had filed a federal declaratory relief action in September 2008, asking the federal court to declare that no policy except the Dodge Ram policy provided coverage for the accident. State Farm then filed a motion for summary judgment in the declaratory relief action. Realizing by then that State Farm's position was correct, Libbey did not contest the declaratory relief sought. In November 2008, the federal court entered final declaratory judgment in favor of State Farm. State Farm paid Giannechini $130,951.37 in November 2008. In March 2009, Giannechini reassigned to Whitney the right to bring a lawsuit.

Whitney filed the present lawsuit in May 2009. He alleged that State Farm had acted in bad faith, and that individual adjusters within State Farm had breached their duty of care to him. State Farm filed a motion for partial summary judgment on a portion of Whitney's bad faith claim, asking for a dismissal of "Plaintiff's claims alleging State Farm breached its duty to settle." Specifically, State Farm argued that it had satisfied its duty to tender policy limits in response to a policy limits demand, as required by *Jackson v. American Equity Insurance Co.*[2] Whitney opposed State Farm's motion, claiming other breaches of the duty to settle such as failure to promptly attempt settlement, failure to inform Whitney of Libbey's offer, and failure to accept Libbey's offer. State Farm responded that "Whitney substantially misconstrues the breadth of the current motion for partial summary judgment." State Farm argued that Whitney's claims were irrelevant to the narrow issue in its motion, which was concerned only with whether, under *Jackson*, State Farm's May 2, 2007 letter had been an appropriate response to Libbey's letter.

2.   90 P.3d 136 (Alaska 2004).

A hearing on the motion for partial summary judgment took place before Superior Court Judge Peter A. Michalski in February 2010. During the hearing, State Farm emphasized that its motion was confined to only a small subset of Whitney's bad faith claims, namely those addressed by *Jackson* and the related case *Bohna v. Hughes, Thorsness, Gantz, Powell & Brundin:* [3]

> I am not seeking a dismissal of the entirety of [Whitney's] breach of good faith obligation claims. I understand there are factual issues involved.
>
> But a core transaction in this case occurred in April and May of 2007. And one thing missing from [Whitney's] total argument here was any reference back to the *Bohna* case that said, in that exact circumstance, a policy limits offer, ... what is an insurance company's obligation? It's to quantify and tender the amount of policy limits.
>
> I'm limiting my motion here to a request that the Court say that State Farm complied with that precise legal duty, as articulated in *Jackson* and *Bohna*. The rest of the claims of bad faith, in terms of what counsel did following that set of events, is still a question that needs to get addressed and resolved either on motion or at trial, but that's not before your Honor now. It's simply whether or not State Farm satisfied the *Bohna/Jackson* duty in terms of how to respond to a policy limits offer.

The order that State Farm drafted, however, was broader in scope than the question in State Farm's motion, stating in part that "State Farm satisfied its duty to settle by its May 2, 2007 offer." On April 26, 2010, the superior court granted State Farm's motion, signing the draft order without modifying the language.

The parties negotiated a stipulation whereby Whitney agreed to dismiss his remaining claims and allow entry of final judgment in favor of State Farm. However, if Whitney was able to overturn the partial summary judgment order on appeal, he could reinstate all of the liability claims voluntarily dismissed by the stipulation other than any claim for punitive damages. The parties jointly requested that the superior court enter final judgment. The court entered final judgment in favor of State Farm on June 16, 2010, dismissing all of Whitney's claims.

Whitney appeals the partial summary judgment order.

## III. STANDARD OF REVIEW

We review summary judgment orders de novo, "drawing all reasonable inferences in the nonmovants' favor and viewing all facts in the light most favoring them." [4] A grant of summary judgment will be affirmed if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[5]

If there are no genuine disputes of material fact, the existence and scope of a legal duty are questions of law which we review de novo.[6]

## IV. DISCUSSION

### A. The Superior Court's Order Exceeded The Scope Of State Farm's Motion For Partial Summary Judgment.

Every insurance contract contains within it the implied covenant of good faith and fair dealing, which requires the contracting parties to avoid behavior that will "injure the right of the other to receive the benefits of the agreement." [7] As part of its duty to

---

**3.** 828 P.2d 745 (Alaska 1992), *superseded by statute on other grounds as recognized in Petrolane Inc. v. Robles*, 154 P.3d 1014, 1019 (Alaska 2007).

**4.** *Kaiser v. Sakata*, 40 P.3d 800, 803 (Alaska 2002) (quoting *Brady v. State*, 965 P.2d 1, 8 (Alaska 1998)).

**5.** *Olivit v. City & Borough of Juneau*, 171 P.3d 1137, 1142 (Alaska 2007) (citing *Norville v. Carr-*

*Gottstein Foods, Co.*, 84 P.3d 996, 1000 n. 1 (Alaska 2004)); *see* Alaska R. Civ. P. 56(c).

**6.** *Diblik v. Marcy*, 166 P.3d 23, 25 (Alaska 2007) (citing *Arctic Tug & Barge, Inc. v. Raleigh, Schwarz & Powell*, 956 P.2d 1199, 1204 (Alaska 1998)).

**7.** *Guin v. Ha*, 591 P.2d 1281, 1291 (Alaska 1979) (citing *Crisci v. Sec. Ins. Co. of New Haven*, 66 Cal.2d 425, 58 Cal.Rptr. 13, 426 P.2d 173, 176

act in good faith, an insurer has a duty to settle—that is, an "obligation[ ] under a contract of liability insurance ... to settle a claim that has been brought against the insured when it is appropriate to do so."[8] An insurer must "investigate claims and inform the insured of all settlement offers and the possibility of excess recovery by the injured claimant."[9] In addition, when a plaintiff makes a policy limits demand, the insurer must "tender maximum policy limits to settle a plaintiff's demand when there is a substantial likelihood of an excess verdict against the insured."[10] In such a situation, the insurance company is obligated to determine "the amount of a money judgment which might be rendered against its insured," and to tender in settlement its contractual share of the judgment.[11] Should the insurer breach its duty to tender its full policy limits, the insured may sue for damages.[12]

In its motion for partial summary judgment, State Farm moved for judgment on one component of the duty to settle—an insurance company's duty under *Jackson* to tender policy limits in response to a policy limits demand. Confusingly, the motion could have been interpreted as asking for a dismissal of *all* of Whitney's duty to settle claims. However, State Farm's attorney subsequently clarified to the superior court that he was not seeking a dismissal of Whitney's bad faith claims altogether, but rather an acknowledgment that in the case of "a policy limits offer, ... an insurance company's obligation [is] to quantify and tender the amount of policy limits." State Farm's attorney then confirmed that he was "limiting [the] motion here to a request that the Court say that State Farm complied with that precise legal duty."

The superior court granted State Farm's motion. The order State Farm had drafted, however, used language much broader than the scope of its motion, stating that "State Farm satisfied its duty to settle by its May 2, 2007 offer," and dismissing all of Whitney's duty to settle claims. The superior court nevertheless signed the order as drafted, with no edits and with no explanation of the court's legal reasoning.

In oral argument before us, State Farm conceded that its draft order was overly broad for the narrow question in its motion. Based on this concession, we reverse the superior court's grant of partial summary judgment and remand for further proceedings. But on the narrow issue that was validly before the superior court—whether State Farm breached its duty to settle by failing to accept Libbey's April 2007 offer—we affirm, as discussed below.

**B. State Farm Did Not Breach The Duty To Settle By Refusing Libbey's April 2007 Offer.**

■ Whitney argues that a question of fact exists as to whether State Farm should have accepted Libbey's settlement offer. We disagree, and find that State Farm's response to Libbey's offer did not breach the duty to settle.

■ An insurance company's implied covenant of good faith and fair dealing obligates it to "accept reasonable offers of settlement in a prompt fashion."[13] Libbey's April 2007 letter, however, triggered no such obligation. First, the letter erroneously presumed that multiple policies applied to the accident, and that the vehicle policies of Whitney's family

(1967); *Comunale v. Traders & Gen. Ins. Co.*, 50 Cal.2d 654, 328 P.2d 198, 200–01 (1958)).

8. ALLAN D. WINDT, INSURANCE CLAIMS AND DISPUTES § 5:01 (5th ed. 2007).

9. *O.K. Lumber Co., Inc. v. Providence Wash. Ins. Co.*, 759 P.2d 523, 525 (Alaska 1988) (citing *Kranzush v. Badger State Mut. Cas. Co.*, 103 Wis.2d 56, 307 N.W.2d 256, 259 (1981)).

10. *Jackson v. Am. Equity Ins. Co.*, 90 P.3d 136, 142 (Alaska 2004) (citing *Schultz v. Travelers Indem. Co.*, 754 P.2d 265, 266–67 (Alaska 1988)).

11. *Id.* (quoting *Bohna v. Hughes, Thorsness, Gantz, Powell & Brundin*, 828 P.2d 745, 768 (Alaska 1992)) (internal quotation marks omitted).

12. *See O.K. Lumber*, 759 P.2d at 525 (citing *Cont'l Ins. Co. v. Bayless & Roberts, Inc.*, 608 P.2d 281 (Alaska 1980); *Guin*, 591 P.2d at 1291).

13. *Guin*, 591 P.2d at 1291.

members could be stacked to give Whitney additional liability coverage. Second, Libbey's offer imposed a number of additional conditions—for instance, the requirement that State Farm produce "a certified copy of the declarations pages and related insurance policy(ies)" for "each and every policy that applies to protect [Whitney]" from an excess verdict. As State Farm argues, "State Farm had no responsibility, right or authority [over] (or even knowledge of) ... the existence or production of insurance policies and records of any other insurance company."

Finally, State Farm responded in 27 days to Libbey's letter with a policy limits offer—State Farm's May 2 letter. State Farm's response was safely within the 30–day deadline that Libbey had given State Farm to respond, and fulfilled its duty to tender policy limits in response to a policy limits demand under *Jackson* and *Bohna*.[14] We conclude that State Farm did not breach its duty to settle by not accepting Libbey's April 2007 offer.

## C. The Balance Of Whitney's Claims Remain Open For Litigation.

Whitney's complaint alleged a number of duty to settle claims outside the scope of State Farm's summary judgment motion: that State Farm failed to attempt settlement promptly, that State Farm breached the duty to settle by failing to inform Whitney of Libbey's settlement offer until it had expired, and that State Farm should have communicated other pieces of information [15] to Whitney that the insurance company did not. These claims remain open for litigation.

## V. CONCLUSION

Because State Farm timely offered policy limits in response to Libbey's April 2007 offer, we AFFIRM the superior court on the narrow question of whether State Farm

breached its duty to settle by rejecting the offer. But because State Farm's draft order exceeded the scope of the issue presented in its motion, we REVERSE the superior court's grant of partial summary judgment to the extent it exceeded the narrow grounds set out above and REMAND for further proceedings. Whitney's remaining duty to settle claims remain open for litigation.

14. *See Jackson*, 90 P.3d at 142; *Bohna*, 828 P.2d at 768.

15. Whitney claims that he had retained an expert, who was prepared to testify that State Farm had an obligation to

a) write an excess letter to advise Whitney that the value of the claim being made against him could exceed the policy limits of the policy or policies written by State Farm, b) advise Whitney to notify any excess carrier, c) advise Whitney of his right to separate counsel to protect his uninsured interests, d) advise Whitney that he was entitled [to] be notified of all settlement offers and demands, and e) advise Whitney of his right to participate in any settlement discussions.