*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

CAROLINE WILLIAMS, personally     )
and as Personal Representative of    )
the ESTATE OF ROBERT              )     Supreme Court No. S-14089
SHAPSNIKOFF and as assignee of    )
ALYA LANDT and INNOCENT           )     Superior Court No. 3AN-04-09429 CI
DUSHKIN; et al.,                      )
                                     )     O P I N I O N
            Appellants,               )
                                     )     No. 6746 - January 25, 2013
      v.                             )
                                     )
GEICO CASUALTY CO., d/b/a         )
GEICO,                             )
                                     )
            Appellee.                 )
_____ )

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Sharon Gleason, Judge.

Appearances: Phillip Paul Weidner and Michael Cohn, Weidner & Associates, APC, Anchorage, for Appellants. Rebecca J. Hozubin and Jim C. Wilkson, Wilkerson Hozubin, Anchorage, for Appellee.

Before: Carpeneti, Chief Justice, Fabe, Winfree, and Stowers, Justices.

CARPENETI, Chief Justice.

## I.   INTRODUCTION

This appeal arises from a declaratory action filed by an insurer to clarify the terms of its duties under a policy. The underlying tort action resulted from a car accident in which the insured, while driving a rental truck, hit a person who was lying in the middle of the road. Both the driver and the person struck were intoxicated, as was a passenger in the truck. The person who was struck died from his injuries. The victim's estate and the survivors sued. The insurance company several times offered to settle the case against both the driver and the passenger (who may have faced liability for his actions after the accident) for policy limits. These offers were rejected. The estate offered to settle for the release of the named insured only, but the insurer rejected that offer. The occupants of the vehicle later settled with the estate, confessing judgment for about $4 million each.

After being unable to reach settlement, the insurer filed a declaratory action to clarify its duties under the policy and resolve issues of who was driving the vehicle, the number of occurrences, and possible breaches of the insurance contract by the insureds. The insureds assigned their claims against the insurer to the estate, which answered and counterclaimed for breach of contract and bad faith. The insurer prevailed on nearly all issues. The personal representative of the estate, for herself and as assignee of the insureds, appeals. Because we find that the insurer did not breach its duties to the insured, we affirm the decision of the superior court.

## II.   FACTS AND PROCEEDINGS

### A.   Facts

#### 1.   Underlying facts

On the morning of September 3, 2000, Alya Landt and Innocent Dushkin were in a rented truck. Both were heavily intoxicated, Landt with a blood alcohol content in the range of .16 to .27 percent and Dushkin with a .17 percent blood alcohol

content.  Landt was driving the truck.[1]  Robert Shapsnikoff was also intoxicated and was lying in the middle of the road.  The vehicle ran him over.

After running Shapsnikoff over, Landt stopped the truck and Dushkin got out to check on him.  When Dushkin got to his side, Shapsnikoff was gasping for breath but did not say anything or respond to Dushkin.  According to Landt, Shapsnikoff was making noises "like no normal person makes."  According to Dushkin, Landt said she "didn't need to be in any trouble with the cops."  Landt and Dushkin then picked Shapsnikoff up and put him in the truck.  Dushkin stated they did that because they thought he was still breathing.  Dushkin attempted to find a heartbeat but could not.  They drove Shapsnikoff to his apartment complex (the parties appear to have known each other socially) and then took him out of the truck and applied CPR.  Finally, Landt called for assistance.

Shapsnikoff suffered mortal injuries as a result of the accident.  The autopsy revealed "numerous blunt force crushing injuries consistent with . . . having been run over by a motor vehicle."  Shapsnikoff's aorta was nearly completely separated from the aortic ligament, which would have caused massive internal bleeding.  The medical examiner believed that, given the injuries, Shapsnikoff lived "seconds to minutes (more likely seconds to two to three minutes)" after the blow.  The medical examiner also believed that loading him into the truck did not increase his injuries or hasten his death.

Landt was criminally charged for her role in the incident.  The medical examiner testified to the grand jury that Shapsnikoff was unlikely to have lived more than a few minutes after being struck.  He also testified that at or near the time of death a person may breathe in a unusual manner, called agonal breathing, either very deep or

---

[1]     Although the pleadings in the underlying tort case indicated that it was unclear who was driving the vehicle, both parties (and the superior court) now agree that Landt was driving.

very shallow, and that it would sound unusual to a lay person. In the criminal trial he testified that Shapsnikoff could have survived at most ten minutes. Landt was ultimately convicted for tampering with evidence and driving while intoxicated but not for criminally negligent homicide or manslaughter.

In August 2002, the appellants, Shapsnikoff's estate and survivors (Shapsnikoffs), filed a civil suit against Landt, Dushkin, and other entities and individuals. Landt and Dushkin ultimately confessed judgment for $4,678,177.42 each.

## 2.    Insurance policy

Landt had a vehicle insurance policy with GEICO Casualty Co. The policy had a liability limit of $50,000 per person and $100,000 per occurrence (plus add-ons consisting of costs, attorney's fees, and interest). The policy also had an uninsured/underinsured coverage limit of $50,000 per person and $100,000 per occurrence. The insurance covered the following for a non-owned vehicle:

1.    [Insured] and [Insured's] relatives . . . .
2.    A person or organization, not owning or hiring the auto, regarding his . . . liability because of acts or omissions of an insured under 1 above.

The limits of liability stated in the declarations are our maximum obligations regardless of the number of insureds involved in the occurrence.

GEICO defended Landt as the named insured. GEICO also agreed to provide Dushkin with a defense under a reservation of rights in the event that Dushkin was not an insured under the policy or that intentional acts led to the deceased's injury. The agreement to defend was based on the allegations that either Dushkin or Landt had been driving.

After Landt and Dushkin confessed judgment, they assigned their rights against GEICO to the Shapsnikoffs.

### 3.     Settlement offers

Throughout the pre-lawsuit period and the underlying tort proceedings, GEICO made several attempts to settle the case for the $50,000 policy limit. GEICO first learned of the incident from Landt's attorney on September 8, 2000. At that time, GEICO was informed that Landt had found Shapsnikoff and driven him home. After learning that Landt had been criminally charged, GEICO claims representative Michael Lina sought and was granted authority to resolve any claim Shapsnikoff's estate may have had against Landt. He was authorized to offer $50,000 plus add-ons, the maximum amount per claimant per occurrence. GEICO contacted Phillip Paul Weidner's office, the law firm representing the Shapsnikoffs, several times before the complaint was filed, in an attempt to settle the claim.

After the underlying complaint was filed, on May 7, 2003, the court was advised that GEICO was willing to settle for the policy limit of $50,000. In January 2004, Daniel Quinn, Dushkin's attorney, notified the Shapsnikoffs that he was authorized by GEICO to settle the claims against Dushkin and Landt for a single $50,000 per person limit plus add-ons. In March 2004, David Carter, Landt's attorney, reiterated the offer to settle for $50,000 plus add-ons in return for a release of claims against Landt and Dushkin. On July 1, 2004, there was an unsuccessful mediation, in which the Shapsnikoffs demanded $100,000 (in the form of two $50,000 policy limits) plus add-ons plus $500,000 from both Landt and Dushkin.

After the failed mediation, Weidner sent identical but independent settlement demands to Dushkin and Landt (via GEICO) for the "true full policy limit proceeds" and 95% of the uninsured/underinsured benefits ($1 million). GEICO rejected any settlement demand that exceeded the $50,000 plus add-ons offer it had previously made. GEICO also filed a declaratory action (from which this appeal arises) to resolve its rights and duties under the policy. In October 2004, GEICO again offered to settle

for $50,000 plus add-ons, while reserving some of the claims for resolution in the declaratory action. This offer was not accepted.

On December 13, 2004, Weidner sent independent and identical settlement demands to Landt and Dushkin expressing a willingness to settle for the full policy limits, $50,000 plus applicable add-ons to be determined by the declaratory judgment. GEICO requested clarification of the total amount required to settle all claims against Landt and Dushkin. GEICO also reiterated its standing offer of $50,000 plus add-ons. Weidner once again sent independent but identical letters to Dushkin and Landt, this time stating that GEICO's response was a bad faith rejection of a settlement offer as to both Dushkin and Landt. In the letters he renewed the offer from December 13 or alternatively offered to accept $112,500 total for the release of all claims against Dushkin and Landt; he also requested an acknowledgment from GEICO that payment would "trigger any UIM [Uninsured motorist] coverage." GEICO renewed its offer of $50,000 plus add-ons in exchange for the release of Landt and Dushkin.

On December 24, 2004, Weidner sent letters to Sam Fortier and Marc June (Landt's and Dushkin's personal attorneys) with the proposal that Landt and Dushkin confess judgment of around $10 million each. On December 31, 2004, Weidner sent a similar letter to David Carter and Daniel Quinn. In response GEICO amended its complaint in the declaratory action to request a ruling that if Landt and Dushkin confessed judgment it would constitute a breach of the insurance contract and there would be no insurance coverage.

In October 2006, Weidner, Carter, and Quinn filed a stipulation for entry of judgment. Landt and Dushkin each confessed judgment for $4,678,177.42.

## B. Proceedings

GEICO filed a declaratory action in July 2004, seeking a declaration of its rights and duties. GEICO also filed several amended complaints corresponding to the

Shapsnikoffs' evolving theories in the underlying case. GEICO sought the following rulings: (1) if Landt or Dushkin entered into a confession of judgment they would be in breach of the insurance contract and there would be no coverage; (2) entry of an order as to who was driving the car at the time of the accident; (3) if Dushkin was driving the car there was no available coverage; (4) there was no second liability limit available to settle the claims (i.e., no second occurrence); (5) there was no underinsured coverage available; (6) the amount owed, if any; and (7) attorney's fees. The Shapsnikoffs filed an answer and a counterclaim alleging that GEICO had breached the insurance contract and was acting in bad faith both by refusing to offer a settlement at policy limits to both Landt and Dushkin and by filing the declaratory action.

The superior court resolved most of GEICO's requests in its favor on summary judgment, "leaving the question of whether there was a second occurrence that could have been covered under the terms of the policy" unresolved. After trial, the superior court concluded that there was not a second occurrence, that GEICO had a reasonable basis to believe that there was not a second occurrence and so did not act in bad faith in seeking the declaratory action, and that GEICO did not breach the insurance contract when it failed to offer a second $50,000 policy limit settlement for pain and suffering incurred by Shapsnikoff when being loaded into the truck. Therefore, it found that Landt and Dushkin were in unexcused breach of the insurance contract when they confessed judgment. GEICO, as the prevailing party, was awarded attorney's fees.

The Shapsnikoffs appeal, arguing that the superior court erroneously (1) concluded that GEICO did not breach its duty to Landt and Dushkin; (2) concluded that there was no second occurrence; (3) concluded that there was not a substantial likelihood of a verdict in excess of policy limits; (4) found Landt and Dushkin to be in material breach when they confessed to judgment; (5) adopted GEICO's proposed findings of fact and conclusions of law; and (6) awarded attorney's fees to GEICO.

## III. STANDARD OF REVIEW

We review a trial court's factual findings for clear error.[2] We reverse only when left with a "definite and firm conviction . . . that a mistake has been made."[3] We apply our independent judgment to questions of law and interpretation of contracts.[4] We review the decision to award attorney's fees for abuse of discretion and overturn it only where the award is manifestly unreasonable.[5]

## IV. DISCUSSION

**A. The Superior Court Correctly Concluded That GEICO Did Not Breach Its Duties When It Offered To Settle For One Policy Limit ($50,000) And The Release Of Both Landt And Dushkin.**

The Shapsnikoffs make several arguments relating to GEICO's failure to offer or accept the appropriate settlement. They suggest that GEICO had a duty alternatively to offer a $50,000 plus add-on settlement for the release of Landt only or to offer two $50,000 settlements for the release of Landt and Dushkin, and that failure to do so was a breach of the insurance contract and was in bad faith.

It is well settled that an insurer has a duty to offer a full policy settlement where there is a substantial likelihood of an adverse verdict in excess of policy limits.[6]

---

[2]     *Stewart v. Elliott*, 239 P.3d 1236, 1239-40 (Alaska 2010).

[3]     *In re Protective Proceedings of W.A.*, 193 P.3d 743, 748 (Alaska 2008) (quoting *Casey v. Semco Energy, Inc.*, 92 P.3d 379, 382 (Alaska 2004)).

[4]     *Chambers v. Scofield*, 247 P.3d 982, 987 (Alaska 2011); *State v. Jeffery*, 170 P.3d 226, 229 (Alaska 2007).

[5]     *DeNardo v. Cutler*, 167 P.3d 674, 677-78 (Alaska 2007) (quoting *Marron v. Stromstad*, 123 P.3d 992, 998 (Alaska 2005)).

[6]     *Bohna v. Hughes, Thorsness, Gantz, Powell & Brundin*, 828 P.2d 745, 768 (Alaska 1992), *superseded by statute on other grounds as recognized in Petrolane Inc.*
(continued...)

Neither party disputes that such a likelihood existed here. Rather, the issue is how the amount and terms of such a settlement relate to GEICO's duty to defend Landt and Dushkin.

First, the Shapsnikoffs argue that GEICO had no duty to defend Dushkin because he was not an insured as to the first occurrence, that is, the initial impact. Second, they argue that even if Dushkin were an insured under the policy, GEICO still ought to have offered or accepted a settlement that would release Landt even if Dushkin was still subject to liability. GEICO responds that it had a duty to defend Dushkin based on the legal theories pled by the Shapsnikoffs. GEICO maintains that once it agreed to defend Dushkin, even if Dushkin were defended under a reservation of rights, it had a duty to fully protect Dushkin and could not settle while releasing only Landt.

The Shapsnikoffs' first argument is not persuasive. It is clear from their pleadings and over the course of the litigation that their legal theory was that either Dushkin or Landt was driving or that the two acted in concert. Generally, an insurer's duty is determined by the policy, which is interpreted according to the parties' reasonable expectations in light of the language of the policy as a whole, as well as extrinsic evidence and applicable case law.[7] An insurer's duty to defend exists where " 'vagaries of law and fact' are sufficient to create the potential that an insured will incur covered liability."[8] "The potential for coverage may be shown either on the face of the complaint

---

**6**      (...continued)
*v. Robles*, 154 P.3d 1014, 1019-20 (Alaska 2007); *Schultz v. Travelers Indem. Co.*, 754 P.2d 265, 266-67 (Alaska 1988).

**7**      *West v. Umialik Ins. Co.*, 8 P.3d 1135, 1138 (Alaska 2000).

**8**      *Makarka ex rel. Makarka v. Great Am. Ins. Co.*, 14 P.3d 964, 969 (Alaska 2000).

or through facts the insurer knew or could have reasonably ascertained that would bring an otherwise uncovered complaint within the policy's coverage."[9]

The Shapsnikoffs presented a theory under which Dushkin may have been an insured — either as a driver or by acting in concert with Landt.[10] Given that, GEICO acted properly in agreeing to defend Dushkin under a reservation of rights.[11] Later, after settlement was not forthcoming and the legal theories became more clear, including GEICO's duty to defend Dushkin, GEICO properly decided to file a declaratory action to resolve the issue of coverage.[12]

Once GEICO agreed to defend Dushkin and Landt, it had a legal duty of good faith and fair dealing toward both.[13] GEICO made proper settlement offers seeking the release of both Landt and Dushkin.

The Shapsnikoffs' second argument — that even if Dushkin were an insured under the policy, GEICO had a duty to offer or accept a settlement releasing

---

[9]     *Id.*

[10]     The Shapsnikoffs also argue that GEICO could not have believed that Dushkin was insured for the first occurrence because a summary judgment stated that Dushkin would not be covered regardless of whether Dushkin was driving. However, this judgment was in the declaratory action where GEICO's duty to defend Dushkin and Landt was the exact question put to the court. The court there decided that Dushkin was not covered as to the first occurrence. This has no bearing on GEICO's earlier actions in defending Dushkin. Further, there was still a question of whether Dushkin was liable for the alleged second occurrence.

[11]     *See CHI of Alaska, Inc. v. Emp'rs Reinsurance Corp.*, 844 P.2d 1113, 1115-16 (Alaska 1993) ("The insurer can preserve its coverage defense and fulfill its duty to defend by defending under a reservation of rights to later disclaim coverage if liability is attributable to the excluded theory.").

[12]     *See Bohna*, 828 P.2d at 768 n.58.

[13]     *See Jackson v. Am. Equity Ins. Co.*, 90 P.3d 136, 142 (Alaska 2004).

Landt even if doing so left Dushkin liable — concerns an unsettled area of law. We have not directly addressed how an insurer should handle multiple insureds. Other jurisdictions have utilized two different approaches. The first is that the insurer should seek to release all insureds, but if it cannot, then it ought to seek to settle on behalf of one.[14] In these cases, the insurer's obligations to other insureds are extinguished by reaching policy limits, even if the other insureds are exposed to personal liability.[15] The second approach requires an insurer to seek release of all insureds; where a settlement cannot be reached the insurer must file a declaratory action to determine what coverage is owed.[16]

We are persuaded that the latter approach is the better one. An insurer has a duty to defend its insureds; seeking a settlement to the benefit of one insured while leaving others open to liability could cause unfairness. Further, the latter approach avoids a potential bad faith claim by an insured who was unprotected and efficiently adjudicates the rights and duties of the insurer and the insured.

Under this rule, GEICO did not have a duty to settle for Landt's release while leaving Dushkin open to liability and therefore it was not in breach of contract nor did it commit the tort of bad faith. We affirm the superior court's holding that GEICO did not breach its duties when it offered to settle for only one policy limit for the release of both Landt and Dushkin.

---

[14] *See, e.g.*, *Travelers Indem. Co. v. Citgo Petroleum Corp.*, 166 F.3d 761, 764-69 (5th Cir. 1999).

[15] *Id.*

[16] *See, e.g.*, *Lehto v. Allstate Ins. Co.*, 36 Cal. Rptr. 2d 814, 820-23 (Cal. App. 1994) ("[A]n insurer can breach its duty to its insureds by disbursing the policy proceeds to [a] claimant without first obtaining a release of the insureds.").

**B.     The Superior Court Did Not Err When It Found That There Was Not A Second Occurrence.**

The Shapsnikoffs argue that when Shapsnikoff was loaded into the truck and moved from the scene there was a second occurrence that triggered GEICO's duty to offer a second $50,000 policy limit settlement.[17]  After trial, the superior court found that Shapsnikoff was mortally wounded when run over by the truck, that he was likely dead within seconds, and that he was not loaded into the truck within seconds.  The superior court further found that even if Shapsnikoff was alive at the time he was loaded into the truck, he was not conscious and therefore was not harmed by the actions.  Accordingly, it concluded that there was no second occurrence.

The superior court's final findings of facts and conclusions of law resolved the genuine dispute of material fact that precluded summary judgment.  The findings were not clearly erroneous.  They were based on ample evidence presented at trial, such as the fact that Shapsnikoff was heavily intoxicated when he was hit and was passed out in the middle of the road, testimony regarding the limited amount of time he would have lived, and testimony that he did not respond after Dushkin arrived at his side.

Because the superior court properly concluded that there was no second occurrence, we affirm the superior court.

---

[17]     The Shapsnikoffs argue that the superior court's findings were erroneous because they were in conflict with the earlier summary judgment ruling.  This argument is without merit.  Simply because there exists a genuine dispute of material fact does not guarantee the prevailing party on summary judgment will ultimately prove the disputed fact.  *See Indus. Commercial Elec., Inc. v. McLees*, 101 P.3d 593, 597 (Alaska 2004) (citing *Alaska Rent-A-Car, Inc. v. Ford Motor Co.*, 526 P.2d 1136, 1139 (Alaska 1974)) ("A party opposing summary judgment need not prove that it will prevail at trial, but only that there is a triable issue of fact.").

**C.    The Superior Court Did Not Err In Finding That There Was Not A Substantial Likelihood Of An Excess Verdict For The Alleged Second Occurrence.**

The Shapsnikoffs argue that GEICO was under a duty to offer a policy limits settlement as to the second occurrence.[18] There is no dispute that where "a plaintiff makes a policy limits demand, the covenant of good faith and fair dealing places a duty on an insurer to tender maximum policy limits to settle a plaintiff's demand when there is a substantial likelihood of an excess verdict against the insured."[19] However, the parties dispute the legal standard of substantial likelihood. The Shapsnikoffs appear to argue that a substantial likelihood is a very low standard, "a real or fair likelihood . . . and not a frivolous or insubstantial likelihood." GEICO argues that the standard equates to probable success on the merits. The superior court ruled that it meant more than a preponderance of the evidence but less than a certainty and found that there was not a substantial likelihood of an excess verdict.

In *Jackson v. American Equity Insurance Co.*[20] we explained that the duty to offer a full policy limits settlement where there is a substantial likelihood of an excess verdict is:

> grounded in the insurer's legal duty to act in good faith [and]
> . . . .[w]hen there is a *great risk* of a recovery beyond the
> policy limits so that the most reasonable manner of disposing
> of the claim is a settlement which can be made within those

---

[18]    The Shapsnikoffs argue that even the substantial likelihood of a verdict of one dollar would trigger GEICO's duty to offer a policy limits settlement. This is incorrect. An insurer's duty to offer a policy limits settlement occurs when there is a *substantial likelihood* of a verdict in *excess of policy limits*. *Jackson v. Am. Equity Ins. Co.*, 90 P.3d 136, 142 (Alaska 2004).

[19]    *Id.*

[20]    90 P.3d at 142.

limits, a consideration in *good faith* of the insured's interest requires the insurer to settle the claim.[21]

In this case, there was not a great risk that Dushkin and Landt would be liable for a verdict in excess of policy limits with respect to the alleged second occurrence, because it was unlikely that a court would find a second occurrence at all. There was ample evidence to support the conclusion that there was no second occurrence, including evidence that Shapsnikoff was heavily intoxicated at the time of impact and that he died within seconds of being struck. The possibility that a fact finder *could* find liability in excess of the policy limits does not establish that there was a great likelihood not only of the claim's success but also of an award in excess of the policy limits. On the facts of this case, it was reasonable for GEICO to offer the single policy limits settlement and to reject any offer not within the single policy limits settlement.

### D. The Superior Court Properly Found Landt And Dushkin In Material Breach When They Confessed Judgment.

The next issue raised is whether Landt and Dushkin breached the insurance contract by confessing judgment. It is clear that confessing judgment can be a breach of the insurance contract.[22] However, the Shapsnikoffs claim that the breach was excused because GEICO acted in bad faith.

---

[21] *Id.* (emphasis added) (footnotes and internal quotation marks omitted).

[22] The GEICO policy requires that "the insured will cooperate and assist us" in the investigation, litigation, and settlement of a suit.

This issue depends on GEICO's duty to settle.[23]  If GEICO breached the insurance contract by failing to settle when there was a duty to do so, then Landt and Dushkin were free to confess judgment due to GEICO's material breach.[24]  An insurer does not breach its duty to settle when it rejects offers that are based on unreasonable policy interpretations.[25]  GEICO refused to settle for more than the policy limits it deemed were required under the contract of insurance.  In this case, that meant settling for $50,000 plus add-ons for the release of both insureds.  GEICO did not have a duty to accept any other settlement.  If an insurer is unclear as to its policy requirements it should file a declaratory action to resolve the issue — as GEICO did.[26]  Because GEICO

---

[23]     Every insurance contract contains within it the implied covenant of good faith and fair dealing, which requires the contracting parties to avoid behavior that will injure the right of the other to receive the benefits of the agreement.  As part of its duty to act in good faith, an insurer has a duty to settle — that is, an obligation[] under a contract of liability insurance . . . to settle a claim that has been brought against the insured when it is appropriate to do so.

*Whitney v. State Farm Mut. Auto. Ins. Co.*, 258 P.3d 113, 116-17 (Alaska 2011) (footnotes and internal quotation marks omitted).

[24]     "Ordinarily, an insured's breach of [a] cooperation clause relieves a prejudiced insurer of liability under the policy."  *Grace v. Ins. Co. of N. Am.*, 944 P.2d 460, 464 (Alaska 1997) (citing *Ariz. Prop. & Cas. Ins. Guar. v. Helme*, 735 P.2d 451, 458-59 (Ariz. 1987)).  Where an insurer has breached its obligations, however, the insured is entitled to take reasonable steps to protect his or her interests.  *See id.* at 464-65.

[25]     *See Whitney*, 258 P.3d at 117-18 (holding that an insurer did not breach its duty to settle when it refused claimant's offer which was based on mistaken belief that multiple policies meant that coverage could be stacked).

[26]     *See Bohna v. Hughes, Thorsness, Gantz, Powell & Brundin*, 828 P.2d 745,

(continued...)

acted properly throughout this case, Landt and Dushkin were in material breach when they confessed judgment. Accordingly, we affirm the superior court. GEICO was not in breach, but Landt and Dushkin, by confessing judgment, breached the cooperation clause and thus there is no coverage.

E.     **The Superior Court Did Not Err In Adopting GEICO's Proposed Findings Of Fact And Conclusions Of Law.**

The Shapsnikoffs argue that the superior court improperly adopted the finding of facts and conclusions of law that GEICO submitted and that the findings themselves were erroneous.[27] We disagree with both arguments.

The Shapsnikoffs' first argument — that a trial court is precluded from adopting proposed findings of fact and conclusions of law — is without merit. "A trial court is . . . entitled to adopt findings and conclusions prepared by counsel, so long as they reflect the court's independent view of the weight of the evidence."[28] The superior court explained its reasoning in adopting GEICO's proposed order:

---

[26]     (...continued)
768 n.58 (Alaska 1992), *superseded by statute on other grounds as recognized in Petrolane Inc. v. Robles*, 154 P.3d 1014 (Alaska 2007) (noting that "[i]f [the insurer] was genuinely confused as to the [obligations], it should have filed a declaratory action rather than exposing [the insured] to personal liability"). The Shapsnikoffs suggest that GEICO improperly filed the declaratory action. This is without merit. GEICO's actions were not in bad faith.

[27]     The Shapsnikoffs also argue that adoption of the proposed findings of fact is a violation of the U.S. and Alaska Constitutions. This argument is wholly undeveloped and is therefore waived for inadequate briefing. *See Adamson v. Univ. of Alaska*, 819 P.2d 886, 889 n.3 (Alaska 1991) ("[W]here a point is given only cursory statement in the argument portion of a brief, the point will not be considered on appeal.").

[28]     *Harris v. Ahtna, Inc.*, 193 P.3d 300, 306 (Alaska 2008) (quoting *Indus. Indem. Co. v. Wick*, 680 P.2d 1100, 1108 (Alaska 1984)).

> It will be evident that many of the Court's findings and conclusions are derived from the proposed findings and conclusions submitted by the plaintiff. This is because the Court has determined, after an independent consideration of the evidence and the law, that many of the proposed findings and conclusions of law submitted by the plaintiff are accurate and supported by a preponderance of the evidence.

The superior court did not abdicate its duty to independently weigh the evidence by adopting the order. The Shapsnikoffs may be displeased with the findings, but all were properly made. We affirm the superior court's adoption of GEICO's proposed findings of fact.

The Shapsnikoffs' second argument — that the facts adopted by the superior court are erroneous — is not persuasive. Upon review of the record, we conclude that the superior court's findings, far from being clearly erroneous, were amply supported by the evidence. The main factual finding that the Shapsnikoffs dispute is whether there was a second occurrence. The superior court found that there was not, based on evidence that Shapsnikoff was heavily intoxicated and passed out in the middle of the road when he was hit, testimony regarding the limited amount of time he would have lived, and testimony that he did not respond after Dushkin arrived at his side.

F.     **The Superior Court Properly Awarded Attorney's Fees To GEICO.**

The superior court awarded GEICO $112,390 in attorney's fees and costs as the prevailing party. The Shapsnikoffs argue that this was inappropriate for two reasons. First, they argue it is unfair as a matter of public policy to award attorney's fees to an insurer that commences an action against its insured. Second, they argue that

AS 09.17.080(d)[29] precludes a joint and several award of attorney's fees.[30]  GEICO responds that in this case it is not against public policy because the Shapsnikoffs are not the insured and they enticed Landt and Dushkin into confessing judgment and assigning their claims against GEICO.[31]  It dismisses the Shapsnikoffs' argument regarding joint and several liability for the attorney's fees as contrary to law.

The superior court's decision to award attorney's fees is reviewed for abuse of discretion and is overturned only where the award is manifestly unreasonable.[32]  Although there may be cases in which the award of attorney's fees to an insurance company that filed a declaratory action against its insured would be unreasonable, this is not such a case.  In this case, the actions of the insureds (or their assignees) precipitated this protracted and complex litigation.  GEICO consistently offered a settlement at the policy limits as it understood them to be and its offers were consistently rejected, even though these offers were proper under the policy.  In the face of the plaintiffs' changing legal theories and the uncertainty about coverage, GEICO sought

---

[29]     "The court shall enter judgment against each party liable on the basis of several liability in accordance with that party's percentage of fault."

[30]     The Shapsnikoffs also argue that they were actually the prevailing party as to central issues regarding the second occurrence.  This argument is without merit. Although the Shapsnikoffs survived summary judgment on the issue of the second occurrence, the superior court ultimately found, without error, that there was not a second occurrence.

[31]     GEICO's argument that there is no public policy concern because the Shapsnikoffs were not the insured is without merit.  Although the Shapsnikoffs are not the original insureds, they are the assignees of the original insureds' claims.  A claim against an insurer is assignable. *See O.K. Lumber Co. v. Providence Wash. Ins. Co.*, 759 P.2d 523, 525 (Alaska 1988).

[32]     *DeNardo v. Cutler*, 167 P.3d 674, 677-78 (Alaska 2007) (citing *Marron v. Stromstad*, 123 P.3d 992, 998 (Alaska 2005)).

clarification via a declaratory action. The Shapsnikoffs continued to demand two policy limits and counterclaimed against GEICO, alleging bad faith in an effort to collect from GEICO an amount in excess of policy limits achieved by negotiating a confession of judgment for over $8 million. On these facts, it was not an abuse of discretion to award attorney's fees to GEICO.

The Shapsnikoffs' argument that joint and several liability for attorney's fees is contrary to law is equally unavailing. Alaska Statute 09.17.080(d) does not apply to this dispute. That statute provides that "[t]he court shall enter judgment against each party liable on the basis of several liability in accordance with that party's percentage of fault." The Shapsnikoffs argue that this statute requires the court to "pro rata" assign attorney's fees "based on a percentage of the share . . . each [plaintiff] could potentially recover." Not only is this nonsensical in an action in which there is no fault apportionment, we have already interpreted this statute on this exact issue:

> The statute applies to findings of fault, whereas awards of attorney's fees and costs pursuant to Civil Rule 82 are not indicative of or dependent upon findings of fault. Civil Rule 82(e) states, "In a case in which damages are apportioned among the parties under AS 09.17.080, the fees awarded to the plaintiff under (b)(1) of this rule must also be apportioned among the parties according to their respective percentages of fault." The clear implication is that, in types of litigation where AS 09.17.080 is not invoked, attorney's fees need not be apportioned by fault. Here there were no damages awarded pursuant to 09.17.080, and it follows that the statute is inapplicable to the award of attorney's fees and costs in this case.[33]

This was not a case in which AS 09.17.080 applied. The superior court properly awarded attorney's fees to GEICO as the prevailing party.

---

[33] *Hughes v. Foster Wheeler Co.*, 932 P.2d 784, 792 (Alaska 1997).

Because the superior properly exercised its discretion, we affirm the award of attorney's fees to GEICO.

## V.    CONCLUSION

We AFFIRM the decision of the superior court in all respects.