# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1091

_____

John E. Gallus; Alexandria Ione Faller,    *
also known as Alexandria Ione Griffin;    *
Diana J. Anderson, Now known as    *
Diana J. Hood; RiverSource Balanced    *
Fund, formerly known as AXP Mutual    *
Fund; RiverSource Precious Metals    *
Fund, formerly known as AXP Precious *
Metals Fund; RiverSource Mid Cap    *
Growth Fund, formerly known as AXP    *
Equity Select Fund; RiverSource Small    *
Cap Advantage Fund, formerly known    *    Appeal from the United States
as AXP Small Cap Advantage Fund;    *    District Court for the
RiverSource Small Cap Value Fund,    *    District of Minnesota.
formerly known as AXP Partners Small *
Cap Value Fund; RiverSource Mid Cap *
Value Fund, formerly known as AXP    *
Mid Cap Value Fund; RiverSource    *
Small Company Index Fund, formerly    *
known as AXP Small Company Index    *
Fund; RiverSource High Yield Bond    *
Fund, formerly known as AXP High    *
Yield Bond Fund; RiverSource Large    *
Cap Equity Fund, successor by merger *
to RiverSource New Dimensions Fund    *
and AXP Blue Chip Advantage Fund,    *
formerly known as AXP Large Cap    *
Equity Fund,    *
   *
       Appellants,    *
   *
     v.    *

Ameriprise Financial, Inc., formerly     *
known as American Express Financial   *
Corporation; Columbia Management     *
Investment Advisors, LLC; Ameriprise   *
Financial Services, Inc., formerly known*
as American Express Financial       *
Advisors, Inc.,                          *
                                     *

        Appellees.         *

_____

Submitted: November 17, 2011
Filed: March 30, 2012

_____

Before WOLLMAN, MURPHY, and BENTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

This appeal requires us to reconsider whether the mutual fund shareholder plaintiffs have set forth sufficient evidence to survive summary judgment on their claim that the mutual fund adviser defendants breached the "fiduciary duty with respect to the receipt of compensation for services" that is imposed by § 36(b) of the Investment Company Act of 1940 (ICA), 15 U.S.C. § 80(a)-35(b). In light of the United States Supreme Court's decision in Jones v. Harris Associates L.P., 130 S. Ct. 1418 (2010), we conclude that the plaintiffs have not met their burden, and thus we affirm the district court's[1] grant of summary judgment in favor of the defendants.

_____

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

# I.

The factual background is fully set forth in our prior panel decision, Gallus v. Ameriprise Financial, Inc., 561 F.3d 816 (8th Cir. 2009). The plaintiffs are shareholders of nine mutual funds (the Funds) that are registered investment companies under the ICA. The Funds are managed and distributed by affiliates of the defendants (collectively, Ameriprise). The complaint alleged that Ameriprise breached its fiduciary duty under § 36(b) of the ICA. Section 36(b) places the burden of proving a breach of fiduciary duty on the plaintiff and further provides, in part:

> [T]he investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company or by the security holders thereof, to such investment adviser or affiliated person of such investment adviser.

15 U.S.C. § 80(a)-35(b). We summarized the plaintiffs claims as follows: (1) the fee negotiation was flawed because it was based on external factors—namely the fee agreements of similar mutual funds in the market; (2) Ameriprise provided comparable advisory services to institutional, non-fiduciary clients at substantially lower fees than it charged the plaintiffs; and (3) Ameriprise misled the Fund's board of directors (the Board) about its arrangements with non-fiduciary clients to prevent the Board from questioning the higher fees charged to the plaintiffs. Gallus, 561 F.3d at 818.

In its first decision, the district court granted summary judgment in favor of Ameriprise, holding that the plaintiffs failed to set forth a genuine issue of material fact that the fees Ameriprise charged "were so disproportionately large that they bear no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining." D. Ct. Order of July 10, 2007, at 20. In doing

so, the district court applied the standard set forth in <u>Gartenberg v. Merrill Lynch Asset Management, Inc.</u>, 694 F.2d 923 (2d Cir. 1982), and considered the factors enumerated therein.[2]

We reversed. We concluded that although "the <u>Gartenberg</u> factors provide a useful framework for resolving claims of excessive fees," excessive fees were not the only way in which a fund adviser can breach its fiduciary duties. <u>Gallus</u>, 561 F.3d at 822. We held that § 36(b) "impose[d] on advisers a duty to be honest and transparent throughout the negotiation process." <u>Id.</u> at 823. Accordingly, we concluded,

> [T]he district court erred in holding that no § 36(b) violation occurred simply because Ameriprise's fee passed muster under the <u>Gartenberg</u> standard. Although the district court properly applied the <u>Gartenberg</u> factors for the limited purpose of determining whether the fee itself constituted a breach of fiduciary duty, it erred in rejecting a comparison between the fees charged to Ameriprise's institutional clients and its mutual fund clients.

<u>Id.</u> Moreover, we instructed the district court to determine "whether Ameriprise purposefully omitted, disguised, or obfuscated information that it presented to the Board about the fee discrepancy between different types of clients." <u>Id.</u> at 824. Ameriprise petitioned for a writ of certiorari.

---

[2]To determine whether the fee "represents a charge within the range of what would have been negotiated at arm's-length in light of all the surrounding circumstances," the <u>Gartenberg</u> court set forth a number of non-exclusive factors: (1) the nature and quality of the services provided by the adviser; (2) the profitability of the mutual fund to the adviser; (3) the extent to which "fall-out" benefits inured to the adviser; (4) economies of scale realized by the adviser; (5) fee structures of comparable funds; and (6) the independence and conscientiousness of the board of directors. 694 F.2d at 928-32.

While the first appeal was pending before our court, the Supreme Court granted certiorari in Jones v. Harris Associates L.P., to consider "what a mutual fund shareholder must prove in order to show that a mutual fund investment adviser breached the 'fiduciary duty with respect to the receipt of compensation for services'" under § 36(b). 130 S. Ct. at 1422 (quoting § 36(b)). After our decision was filed, the Court issued its decision in Jones and thereafter granted Ameriprise's petition, vacated our panel opinion, and remanded the case to us for further consideration in light of Jones. Ameriprise Fin., Inc. v. Gallus, 130 S. Ct. 2340 (2010). In turn, we remanded the case to the district court, which reinstated its earlier decision and re-entered judgment in favor of Ameriprise. D. Ct. Order of Dec. 10, 2010.

II.

In Jones, the Supreme Court concluded that "Gartenberg was correct in its basic formulation of what § 36(b) requires: to face liability under § 36(b), an investment adviser must charge a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining." 130 S. Ct. at 1426. The Court adopted the meaning of fiduciary duty set forth in Pepper v. Litton, 308 U.S. 295 (1939). When reviewing a claim for breach of fiduciary duty, "[t]he essence of the test is whether or not under all the circumstances the transaction carries the earmarks of an arm's length bargain." Jones, 130 S. Ct. at 1427 (quoting Pepper, 308 U.S. at 306-07) (emphasis omitted). Accordingly, all relevant circumstances must be taken into account, and the benchmark for reviewing challenged fees is "the range of fees that might result from arm's-length bargaining." Id. (citing Gartenberg, 694 F.2d at 929).

The Supreme Court found that "Gartenberg's approach also reflects § 36(b)'s place in the statutory scheme[.]" Id. Gartenberg directs courts to consider the conscientiousness of the board of directors in its decision to approve the adviser's fee, 694 F.2d at 930, and the ICA instructs courts to give the board's approval of adviser

compensation "such consideration . . . as is deemed appropriate under all the circumstances[,]" 15 U.S.C. § 80a-35(b)(2). From the statutory language, the Supreme Court drew the following inferences: "[A] measure of deference to a board's judgment may be appropriate in some instances," but "the appropriate measure of deference varies depending on the circumstances." Jones, 130 S. Ct. at 1428. We thus give deference to the board's approval "[w]here a board's process for negotiating and reviewing investment-adviser compensation is robust[.]" Id. at 1429. Where, however, "the board's process was deficient or the adviser withheld important information, the court must take a more rigorous look at the outcome." Id. at 1430. Although § 36(b) is "sharply focused" on whether the fees are excessive, we evaluate the fee-negotiation process to determine the degree of deference that is due a board's decision to approve the adviser's fees. Id. (quoting Migdal v. Rowe Price-Fleming Int'l, Inc., 248 F.3d 321, 328 (4th Cir. 2001)). The Court concluded that Gartenberg's approach followed the ICA's directive. Id. at 1428; see Gartenberg, 694 F.2d at 930 ("[T]he expertise of the independent trustees of a fund, whether they are fully informed about all facts bearing on the adviser-manager's service and fee, and the extent of care and conscientiousness with which they perform their duties are important factors to be considered in deciding whether they and the adviser-manager are guilty of a breach of fiduciary duty in violation of § 36(b).").

The Supreme Court also clarified that comparisons between the fees that an adviser charges its institutional clients and the fees it charges its mutual fund clients may be relevant. "[C]ourts may give such comparisons the weight that they merit in light of the similarities and differences between the services that the clients in question require, but courts must be wary of inapt comparisons." Jones, 130 S. Ct. at 1428. In a footnote, the Court allayed the advisers' concerns that such comparisons will "doo[m] [a]ny [f]und to [t]rial." Id. at 1429 n.8 (quoting Br. for Respondent) (alterations in Jones). "Only where plaintiffs have shown a large disparity in fees that cannot be explained by the different services in addition to other evidence that the fee is outside the arm's-length range will trial be appropriate." Id. By the same token,

the Court warned against relying too heavily on the fees charged to mutual funds by other advisers, noting that those fees might not have been the product of negotiations conducted at arm's length. Id. at 1429.

This appeal requires us to review *de novo* the district court's grant of summary judgment in favor of Ameriprise. See Ferguson v. United States, 484 F.3d 1068, 1072 (8th Cir. 2007) (standard of review). To do so, we must determine whether plaintiffs have raised a genuine issue of material fact that Ameriprise charged "a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining." Jones, 130 S. Ct. at 1426. As explained more fully below, we conclude that the plaintiffs have failed to meet that burden.

III.

Jones has altered the way in which we determine whether an adviser has breached its fiduciary duty under § 36(b). In our previous decision, we held that "the proper approach to § 36(b) is one that looks to both the adviser's conduct during negotiation and the end result. Unscrupulous behavior with respect to either can constitute a breach of fiduciary duty." Gallus, 561 F.3d at 823 (citation omitted). The plaintiffs urge us to forego reconsideration of that holding, but after Jones, a process-based failure alone does not constitute an independent violation of § 36(b). Instead, we have been instructed that § 36(b) "is sharply focused on the question of whether the fees themselves were excessive." Jones, 130 S. Ct. at 1430 (quoting Migdal, 248 F.3d at 328, and citing 15 U.S.C. § 80a-35(b) (imposing a "fiduciary duty with respect to the *receipt of compensation* for services, or of payments of a material nature" (emphasis added in Jones))).

In evaluating an investment adviser's fiduciary duty, we continue to "take into account both procedure and substance." Id. at 1429. The fee-negotiation process

remains crucially important, as it allows the court to determine the amount of deference to give the board's decision to approve the fee. If "the disinterested directors considered the relevant factors, their decision to approve a particular fee agreement is entitled to considerable weight, even if a court might weigh the factors differently." Id. If, however, the process of approving the fees was flawed—either because the board's process was deficient or because the adviser withheld material information—we must "take a more rigorous look at the outcome" and give less deference to the board's decision to approve the adviser's fees. Id. at 1430.

We fully considered the fee-negotiation process between the Board and Ameriprise in our prior panel opinion, albeit without the guidance of Jones. The record reflected that the negotiation focused on the advisory fees charged by peer mutual funds and that the outcome was "a fee arrangement that, broadly speaking, was comparable to the rates paid by shareholders of other mutual funds throughout the industry." Gallus, 561 F.3d at 819. We recounted the information that had been provided to the Board, "including reports on the services provided to the Funds, the personnel providing those services, the investment performance of the Funds, and the profit Ameriprise derived from the Funds." Id. at 818. We also reviewed the Board's requests for further data and Ameriprise's response. For example, after the Board became aware of the comparatively lower fees Ameriprise charged its institutional clients, it requested a report explaining the similarities and differences between the two types of accounts. This report, entitled the San Diego Office Review, compared the fee structures of Ameriprise's mutual funds and its institutional accounts. The Board thus considered the relevant factors, and its process can fairly be described as robust.[3]

Notwithstanding the Board's efforts, there remains the question of the deference to be accorded its decision in light of the fact that the Board was not

---

[3]The plaintiffs did not challenge the Board members' independence.

apprised of all relevant information regarding the fee discrepancy between Ameriprise's mutual fund and institutional clients. The plaintiffs further maintain that the Board's process was flawed because the Board relied too heavily on a comparison between Ameriprise's fees and those charged by other advisers. Jones cautioned courts that such comparisons are problematic because the comparison fees, "like those challenged, may not be the product of negotiations conducted at arm's length." 130 S. Ct. at 1429. In light of these circumstances, less deference is given to the Board's judgment than would have been the case had Ameriprise been candid about the fees it charged its clients and had the Board not focused primarily on tethering the fees to the industry median.[4] Moreover, in such circumstances courts are to "take a more rigorous look at the outcome of the negotiations," the fees themselves. See id. at 1430.

We turn then to the comparison between the fees charged to Ameriprise's mutual fund clients and the fees charged to its institutional clients. The plaintiffs argue that such a comparison is probative and that the disparity in fees is evidence that Ameriprise charged excessive fees to its mutual fund clients. Ameriprise contends that the comparison has no factual predicate and thus is not relevant. Although the disparity in fees charged to Ameriprise's different clients is likely relevant to whether the fees fall within the arm's length range, see Gallus, 561 F.3d at 824, the plaintiffs have failed to set forth the additional evidence required to survive summary judgment. See Jones, 130 S. Ct. at 1429 n.8.

---

[4]We disagree with the plaintiffs' argument that "[a] defective process implies an excessive fee." Appellants' Br. 23. A defective process affects the amount of deference we give to the fee arrangement reached between the board of directors and the adviser of the fund. Jones, 130 S. Ct. at 1429-30; see 15 U.S.C. § 80a-35(b)(2); Gartenberg, 694 F.2d at 930.

The plaintiffs maintain that they presented additional evidence in the following categories to show that the fees are beyond the arm's length range: Ameriprise retained the economies of scale it realized from the Funds; Ameriprise recognized excessive "fall out" financial benefits from its relationship with the Funds;[5] and the Funds did not perform well. In its original analysis of the Gartenberg factors, the district court considered each of these categories and the evidence presented in support thereof. It concluded that the evidence was insufficient to meet the Gartenberg standard and survive summary judgment. D. Ct. Order of July 10, 2007, at 11-16. We agreed with that part of the district court's analysis and rejected the plaintiffs' contention that this evidence showed that the fees constituted a breach of fiduciary duty. Gallus, 561 F.3d at 823 (concluding that "the district court properly applied the Gartenberg factors for the limited purpose of determining whether the fee itself constituted a breach of fiduciary duty"). We conclude that nothing in Jones requires us to revisit these arguments.

The plaintiffs also argue that the flawed fee-negotiation process constitutes additional evidence that the fees are outside the arm's length range. As set forth above, any deficiencies in the process affects the amount of deference we give to the board's decision to approve the adviser's fee. Where the negotiations were flawed, Jones also requires courts to "take a more rigorous look at the outcome." 130 S. Ct. at 1430. We do not read Jones to allow a deficient process to be the additional evidence required to survive summary judgment, however, because the opinion's language again focuses on evidence that the fee is outside the arm's length range. Id. at 1429 n.8 ("Only where plaintiffs have shown a large disparity in fees that cannot

---

[5]Gartenberg described "fall out" benefits as benefits to the adviser "in the form of commissions on non-Fund securities business generated by Fund customers and interest income on funds (known as the 'float') held by the Broker from the date when a redemption check is issued by the Fund to its customers until the date it clears." 694 F.2d at 932.

be explained by the different services in addition to *other evidence that the fee is outside the arm's-length range* will trial be appropriate." ) (emphasis added).

The plaintiffs' final argument with respect to the adviser fees is that the district court failed to subject the fees to the greater scrutiny required when the fee-negotiation process is deficient. Although the district court did not reconsider the similarities and differences between Ameriprise's mutual fund and institutional clients, that analysis is not dispositive to the outcome of the case because the plaintiffs failed to set forth additional evidence that the fees were outside the arm's length range. We conclude that, when considered in the light of Jones, the district court's initial review of the other relevant circumstances and the disputed fees themselves was sufficiently detailed to constitute a "rigorous look at the outcome," 130 S. Ct. at 1430, and that there is thus no need to remand for further proceedings.

IV.

Section 12b of the ICA mandates that an investment company acting as a distributor of its own securities comply with the rules and regulations promulgated thereunder by the Securities and Exchange Commission (SEC). 15 U.S.C. § 80a-12(b). Under SEC Rule 12(b)(1), Ameriprise is held to the fiduciary standard set forth in § 36(b) when, in accordance with the law, it compensates underwriters, dealers, and sales personnel with a percentage of its fund's assets in connection with the distribution and marketing of its fund's shares. 17 C.F.R. § 270.12b-1. The plaintiffs argue that Ameriprise's 12b-1 fees violate § 36(b), but they have failed to show that the fees are outside "the range of what would have been negotiated at arm's-length in the light of all of the surrounding circumstances[.]" Gartenberg, 694 F.2d at 928. Instead, they have argued that the standard for review is whether the 12b-1 fees benefit the mutual fund and its shareholders and that Ameriprise's shareholders received no net benefit from the 12b-1 fee. When viewed in light of the proper analytical framework, the plaintiffs have failed to meet the Gartenberg

standard, as applied by <u>Jones</u>, and summary judgment was appropriate. <u>See</u> <u>Meyer v. Oppenheimer Mgmt. Corp.</u>, 895 F.2d 861, 866 (2d Cir. 1990) (applying <u>Gartenberg</u> to a § 36(b) challenge to 12b-1 fees).

V.

The judgment is affirmed.

_____