NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

## For the Seventh Circuit
### Chicago, Illinois 60604

August 6, 2015

Before

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge**

No. 07-1624

JERRY N. JONES, MARY F. JONES,
and ARLINE WINERMAN,
    *Plaintiffs-Appellants*,

      *v.*

HARRIS ASSOCIATES L.P.,
    *Defendant-Appellee*.

On Remand from the Supreme Court of the United States.

**Order**

Plaintiffs contend that Harris Associates charged excessive fees for advising mutual funds in the Oakmark complex. The district court rejected this contention, *Jones v. Harris Associates L.P.*, 2007 U.S. Dist. LEXIS 13352 (N.D. Ill. Feb. 27, 2007), and although we disagreed with the legal standard the district court had used we nonetheless affirmed. *Jones v. Harris Associates L.P.*, 527 F.3d 627 (7th Cir. 2008). The Supreme Court in turn disagreed with our legal standard and remanded for application of the approach that the Justices adopted: "[T]o face liability under § 36(b) [15 U.S.C. §80a–35(b)], an invest-

---

* Circuit Judge Evans, a member of the panel that originally decided this appeal, died after the remand from the Supreme Court. The case is being decided by a quorum. 28 U.S.C. §46(d).

ment adviser must charge a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining." *Jones v. Harris Associates L.P.*, 559 U.S. 335, 346 (2010).

After the case returned to this court, the parties filed statements under Circuit Rule 54 (and we allowed a second round of statements, so that each side could address the other's position). Plaintiffs' statement principally contended that Harris's fees should be deemed excessive because they were not approved through proper procedures. The procedural problem, plaintiffs maintained, is that Victor Morgenstern, the CEO of one of Harris's partners, was deemed to be among the funds' disinterested trustees after he retired. That was improper, plaintiffs contend, because his deferred compensation could have been curtailed if Harris failed to meet certain revenue targets. This argument was presented and rejected on the initial appeal, 527 F.3d at 629–30, where we held that the funds' decisions were procedurally sound, and plaintiffs omitted the subject from their petition for certiorari. The only question the Supreme Court remanded to us for decision is the one we quoted above. "[A]fter *Jones*, a process-based failure alone does not constitute an independent violation of §36(b). Instead, we have been instructed that §36(b) 'is sharply focused on the question of whether the fees themselves were excessive.'" *Gallus v. Ameriprise Financial, Inc.*, 675 F.3d 1173, 1179 (8th Cir. 2012).

The district court granted summary judgment to Harris after applying a legal standard similar to the one eventually adopted by the Supreme Court. The standards are not identical, because the Supreme Court's approach does not allow a court to assess the fairness or reasonableness of advisers' fees; the goal is to identify the outer bounds of arm's length bargaining and not engage in rate regulation. This means that the Supreme Court's standard is less favorable to plaintiffs than the one the district court used—yet plaintiffs lost even under the district court's approach.

The district court found that there is no material dispute about four propositions, which collectively require a decision for Harris: first, Harris's fees were in line with those charged by advisers for other comparable funds; second, Harris provided accurate information to the funds' boards, whose disinterested members approved the fees; third, the fee schedules reduced the applicable percentage charge as funds' assets rose (for example, Harris's fee for one fund was 1% of assets up to $2 billion but 0.75% of assets over $5 billion); fourth, the fees could not be called disproportionate in relation to the value of Harris's work, as the funds' returns (net of fees) exceeded the norm for comparable investment vehicles. 2007 U.S. Dist. LEXIS 13352 at *23.

Plaintiffs do not raise any factual question about any of these points, the first and fourth of which jointly suffice under the Supreme Court's standard. The Justices ask

whether a fee is so large that it could not have been the result of arm's length bargaining. This record shows that Harris's fee was comparable to that produced by bargaining at other mutual-fund complexes, which tells us the bargaining range. If evidence implied that Harris's services were worth less than the services that other advisers provide for other funds, that would imply that arm's length bargaining would produce a lower fee. But the undisputed evidence shows that Harris delivered value for money; the funds it was advising did as well as, if not better than, comparable funds.

As they did in the district court, plaintiffs seek to avoid the implications of these facts. Instead of comparing the fees Harris received from public mutual funds with the fees that other similar funds have paid to different advisers (the Supreme Court's question about arm's length bargaining), plaintiffs want us to compare the fees that Harris charged the Oakmark funds with the fees that Harris charged some of its other clients, such as pension funds. Our initial opinion rejected this contention, 527 F.3d at 634–35, and the Supreme Court did not disagree with us:

> Since the Act requires consideration of all relevant factors, 15 U.S.C. §80a-35(b)(2); see also §80a-15(c), we do not think that there can be any categorical rule regarding the comparisons of the fees charged different types of clients. Instead, courts may give such comparisons the weight that they merit in light of the similarities and differences between the services that the clients in question require, but courts must be wary of inapt comparisons. As the panel below noted, there may be significant differences between the services provided by an investment adviser to a mutual fund and those it provides to a pension fund which are attributable to the greater frequency of shareholder redemptions in a mutual fund, the higher turnover of mutual fund assets, the more burdensome regulatory and legal obligations, and higher marketing costs. If the services rendered are sufficiently different that a comparison is not probative, then courts must reject such a comparison. Even if the services provided and fees charged to an independent fund are relevant, courts should be mindful that the Act does not necessarily ensure fee parity between mutual funds and institutional clients contrary to petitioners' contentions.

559 U.S. at 349–50 (internal citations and quotations omitted).

Plaintiffs have not proffered evidence that would tend to show that Harris provided pension funds (and other non-public clients) with the same sort of services that it provided to the Oakmark funds, or that it incurred the same costs when serving different types of clients. They therefore lack the sort of evidence that might justify a further inquiry under the Supreme Court's approach. The Supreme Court did not disapprove our

analysis of this aspect of plaintiffs' contentions, so we have no reason to reopen the matter on remand.

The district court's decision has held up well.

We close with an apology to the parties. After the Rule 54 statements were received, the papers were placed in the wrong stack and forgotten. The court's internal system for tracking cases under advisement does not include remands from the Supreme Court, so the normal process of alerts and ticklers failed. We will see to it that this is fixed. That may be small comfort to these litigants and their lawyers, but at least some good will come from the delay.

AFFIRMED