**NOT FOR PUBLICATION**

FILED

UNITED STATES COURT OF APPEALS

SEP 29 2015

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



| | |
|---|---|
| DONALD TURNER, on Behalf of the Davis New York Venture Fund,<br><br>        Plaintiff-Appellant,<br><br>  v.<br><br>DAVIS SELECTED ADVISERS, LP and DAVIS DISTRIBUTORS, LLC,<br><br>        Defendants-Appellees. | No. 13-15742<br><br>4:08-cv-00421-AWT<br><br>MEMORANDUM* |

On Appeal from the United States District Court
for the District of Arizona
A. Wallace Tashima, Senior Circuit Judge, Presiding

Argued and Submitted June 10, 2015
San Francisco, California

Before: HAWKINS and WATFORD, Circuit Judges, and RAKOFF, Senior District Judge.**

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Jed S. Rakoff, Senior District Judge for the U.S. District Court for the Southern District of New York, sitting by designation.

Plaintiff-appellant Donald Turner appeals the judgment of the district court dismissing his amended complaint brought under the Investment Company Act of 1940 (the "ICA"), and its denial of his motion to alter or amend the judgment. We affirm.

Turner holds Class A shares in the Davis New York Venture Fund (the "Davis Fund" or the "Fund"), an open-end diversified mutual fund registered under the ICA. Defendant-appellee Davis Selected Advisers, LP ("DSA") is the Fund's investment adviser, and defendant-appellee Davis Distributors, LLC ("DD") is a broker-dealer and the "principal underwriter of the shares of the Fund."

According to the Amended Complaint, DSA and DD charge shareholders in the Fund a number of different fees, three of which are the subject of Turner's amended complaint. First, all shareholders pay an advisory fee based on a percentage of net assets (which decreases as the Fund grows in size) to compensate DSA "for managing the portfolio of securities and for providing some of the back-office support operations." Second, DD collects from all shareholders a "service fee" of .25% of the Davis Fund's net assets under management to support "both pre-sale and post-sale shareholder services." Third, DD charges Class B, C and R shares a "distribution fee" that varies from .5% to .75% of the Fund's net assets

and that is "mainly used to finance payments to dealers primarily as commissions to compensate the individual stockbrokers for their sales activities."[1]

On July 28, 2008, Turner initiated this action in the United States District Court for the District of Arizona, alleging that DSA and DD were in breach of the "fiduciary duty with respect to the receipt of compensation for services" imposed by § 36(b) of the ICA with respect to each of these three fees, *see* 15 U.S.C. § 80a-35(b), and that appellees also violated § 47(b) and § 48(a) of the ICA, *see id.* §§ 80a-46, 47.[2] On May 31, 2011, the district court dismissed the Amended Complaint with prejudice, and on March 19, 2013, the district court denied Turner's motion to amend the judgment and to allow Turner to file a second amended complaint. This appeal followed.

We review de novo a district court's order granting a motion to dismiss for failure to state claim. *See Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015). "[T]o face liability under § 36(b), an investment adviser must charge a fee that is so disproportionately large that it bears no reasonable relationship to the

---

[1] Instead of paying an annual distribution fee, Class A shareholders pay "an initial sales charge into the purchase price (approximately 4.75% of the offering price)."

[2] Sections 47(b) and 48(a) of the ICA respectively address the making of unlawful contracts and control person liability. Turner effectively waived these claims when he opted to challenge only the dismissal of his allegations under § 36(b).

services rendered and could not have been the product of arm's length bargaining." *Jones v. Harris Associates L.P.*, 559 U.S. 335, 346 (2010). "[A] court's evaluation of an investment adviser's fiduciary duty must take into account both procedure and substance." *Id.* at 351. With respect to procedure, the level of deference a court affords to the decision of a mutual fund's board of directors to approve a certain fee depends on the robustness of the board's process for reviewing that contract. Where the process is deficient, a court must take a more rigorous look at the substance of the fees extracted from the fund's shareholders, and vice versa. *See id.* As for substance, courts consider a number of factors to determine whether the fee charged is excessive in light of the services rendered, including, but not limited to, "(a) the nature and quality of services provided to fund shareholders; (b) the profitability of the fund to the adviser-manager; (c) fall-out benefits; (d) economies of scale; [and] (e) comparative fee structures." *Krinsk v. Fund Asset Mgmt., Inc.*, 875 F.2d 404, 409 (2d Cir. 1989).

At the outset, we note that the Amended Complaint affirmatively alleges that the Fund's board of directors had available to it the "data necessary to determine whether" the advisory fees and 12b-1 fees charged were appropriate. Accordingly, we "afford commensurate deference to the outcome of the [Davis Fund's board's]

bargaining process." *See Jones*, 559 U.S. at 351. Although Turner also alleges that the board met only infrequently and that DSA controlled what information the board possessed, the former assertion is insufficient, on its own, to establish that the board's "process was deficient" and the latter is irrelevant in light of Turner's concession that DSA provided the board with the relevant information.

Turner's allegations with respect to the substance of the advisory fee the Davis Fund paid to DSA also fail. The majority of Turner's allegations are grounded in inapt comparisons. Turner alleges that the Davis Fund underperformed the S&P 500 Total Return Index, but unlike an index fund, the Davis Fund is an actively managed fund that, according to the Amended Complaint, pursued an investment strategy focused on investing in "large companies with market capitalizations of at least $10 billion." To support a § 36(b) claim, allegations pertaining to a fund's performance must use mutual funds pursuing similar investment strategies as comparators. *Cf. Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 344 (2d Cir. 2006) ("In comparing AO Fund share returns to gains and losses of the S & P 500 Index, the Yampolsky Complaint demonstrates little, if anything, about the nature or quality of the specific services offered to AO Fund customers."). Likewise, Turner compares the size of DSA's advisory fee to

that of the fee extracted from other mutual funds, but he fails to allege that these other funds' advisers provided the same services or pursued a similar investment strategy. As a result, these juxtapositions lend no support to Turner's claim.

Turner next alleges that DSA failed to pass along economies of scale to the Fund's shareholders. Yet other than a conclusory statement that "[a]s the Fund grows larger, economies of scale occur for many Fund activities" and general allegations about cost savings resulting from technology advances and deregulation (neither of which may accurately be described as "economies of scale"), the Amended Complaint's only allegation pertaining to this issue is that the time and cost of research devoted to whether to make a "particular investment in a particular stock . . . remains the same regardless of whether the size of the investment would be for millions of dollars or hundreds of millions of dollars." This is far from enough to save Turner's claim from dismissal. The carefully worded allegation does not actually assert that the amount of time and money that DSA spent performing research remained the same as the fund increased in size, but only that the cost of researching a "particular investment in a particular stock" stayed flat. Further, the Amended Complaint offers no explanation of what percentage of DSA's work was spent researching specific investments. As a result, Turner's

allegations regarding economies of scale also fail to support an inference that the advisory fee DSA charged bore no reasonable relationship to the services rendered. *See Jones*, 559 U.S. at 346. We therefore affirm the district court's dismissal of Turner's § 36(b) claim based on DSA's advisory fee.

Turner's attack on the 12b-1 service fee that DD charges, which can essentially be distilled to three allegations, is even less compelling. First, Turner alleges that, because the service fee is used, in part, to grow the fund, the related increase in the size of the advisory fee and transfer agent fees that DSA and DD collect–fees paid for services such as "the processing of the sale and redemption of Fund shares [and] maintenance of records"–constitute fall-out benefits.[3] But an increase in advisory and transfer fees will always be a byproduct of fees used to grow a mutual fund, unless the efforts to grow the fund are unsuccessful. The mere labeling of such fees as "fall-out benefits" therefore says nothing about whether the service fee here fails to resemble what would be the product of arm's-length bargaining. Second, Turner alleges that some of the 12b-1 service fee was used to pay for services that "[t]he broker-dealer is legally obligated to provide . . . under

---

[3] "Fall-out benefits" are "those collateral benefits that accrue to the adviser because of its relationship with the mutual fund." *Jones*, 559 U.S. at 344 n.5.

the applicable statutes and New York Stock Exchange and NASD/FINRA regulatory regimes." A legal obligation to perform certain services, however, is not an obligation to perform those services for free, and so we decline Turner's invitation to view a fee paid for such services as per se excessive. Third, Turner compares the total 12b-1 fees DD charges to the fees charged to other funds. Because the Amended Complaint does not explain what 12b-1 services were provided to the other funds, these comparisons again fail to show that any fee is excessive. Thus, we affirm the district court's conclusion that Turner failed to adequately allege that the 12b-1 service fee was so disproportionately large that it bore no reasonable relation to the services rendered.

Turner further argues that the service fees were unlawfully used for post-sale shareholder services when 12b-1 fees must, according to Turner, be used to finance activity primarily intended to result in the sale of shares. A claim challenging the use, as opposed to the size, of a fee is not cognizable under § 36(b). "In order to state a claim under § 36(b), one must allege excessive fees, rather than fees that might simply be described as 'improper.'" *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (citing *Gartenberg*, 694 F.2d at 928); *Gallus v. Ameriprise Fin., Inc.*, 675 F.3d 1173, 1181-82 (8th Cir. 2012).

We also affirm the district court's dismissal of Turner's challenge to the 12b-1 distribution fees, though for a different reason. As stated above, the Amended Complaint alleges that only Class B, C, and R shareholders are charged a distribution fee. Thus, regardless of whether that distribution fee is excessive, Turner has not suffered any injury from it, and he therefore lacks standing to challenge it. *See Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1108 (9th Cir. 2003); *see also Gollust v. Mendell,* 501 U.S. 115, 125 (1991). The district court determined that Turner had standing because "each share class participates in the same portfolio of assets" such that "excessive fees charged to one class will detract from the overall pool and affect the value of other share classes." This conclusion, however, conflicts with Turner's allegation that Class A shareholders are not charged the distribution fee and with SEC regulations requiring that each share class bear its own fees, *see* 17 C.F.R. § 270.18f-3(a)(1)(i), which Turner does not allege appellees violated. Tellingly, though the Amended Complaint asserts that the distribution fee is "in effect" paid out of the Fund's assets, it never alleges that,

as the district court suggested, the distribution fee itself lowered the value of Class A shares or that it deprived Class A shares of growth from a missed investment.[4]

As for Turner's remaining causes of action, Turner has not offered any argument with respect to the district court's dismissal of the § 47(b) claim and he concedes that the survival of the § 48(a) claim depends on his § 36(b) claim. We therefore affirm the district court's dismissal of these claims as well.

Finally, we affirm the district court's denial of Turner's motion to amend the judgment and to amend his complaint, which we review for abuse of discretion. *See Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011). "[O]nce judgment has been entered in a case, a motion to amend the complaint can only be entertained if the judgment is first reopened under a motion brought under Rule 59 or 60." *Lindauer v. Rogers*, 91 F.3d 1355, 1357 (9th Cir. 1996), *as amended* (Sept. 4, 1996). "[A] Rule 59(e) motion may be granted: (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable

---

[4] Turner additionally argues that the distribution fee was used to grow the Fund to such a large size that the shareholders actually experienced "diseconomies of scale." As we held above, § 36(b) does not provide shareholders with a cause of action to challenge an adviser's business decisions simply because the adviser collects a fee to support the activities carrying out those decisions. Hence, this aspect of Turner's amended complaint, even if he had standing to assert it, would fail as well.

evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law." *Allstate*, 634 F.3d at 1111.

We first reject Turner's suggestion that the Supreme Court's decision in *Jones v. Harris* and our non-precedential decision in *Jelinek v. Capital Research & Mgmt. Co.*, 448 F. App'x 716 (9th Cir. 2011) constituted changes in "controlling law" that warranted reopening the judgment below. The Supreme Court handed down *Jones* over a year before the district court issued its decision, and the parties were required to brief the decision before the district court decided appellees' motion. Thus, even if *Jones* changed the law, the time for Turner to move to amend the complaint was during the intervening fourteen months before the district court ruled on appellees' motion. Although *Jelinek* was not decided until after the district court ruled, it is plain that a memorandum disposition is not "controlling law" for these purposes. *See* Ninth Circuit Rule 36-3(a).

We also conclude that the district court did not abuse its discretion in determining that reopening the judgment to allow Turner to amend the complaint was not necessary to prevent a manifest injustice. Turner had already amended his initial complaint once in response to appellees' first motion to dismiss, and the

second motion to dismiss had been pending for almost two years by the time the district court decided it. He thus "had ample opportunity to file an amended complaint with new allegations before the court issued its final judgment," and now has no excuse for failing to do so. *Premo v. Martin*, 119 F.3d 764, 772 (9th Cir. 1997). This is especially true since the new allegations in the proposed second amended complaint are based not on new evidence, but on information to which Turner has had access from the inception of this suit. *Royal Ins. Co. of Am. v. Sw. Marine,* 194 F.3d 1009, 1017 (9th Cir. 1999).

**AFFIRMED.**